**Ken M. STABLER, Plaintiff,**

v.

**The NEW YORK TIMES COMPANY, National Broadcasting Company, a wholly-owned Subsidiary of RCA Corporation, and RCA Corporation, Defendants.**

**Civ. A. No. H–82–2485.**

United States District Court, S.D. Texas, Houston Division.

April 29, 1983.

---

**15.** South Central Bell is neutral on this issue.

**16.** July 8, 1983 Opinion at 1081.

Nick C. Nichols, Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, Houston, Tex., for plaintiff.

Royce R. Till, Fulbright & Jaworski, W. Robert Brown, Liddell, Sapp, Zively, Brown & Laboon, Houston, Tex., George Freeman, New York City, for defendant.

## MEMORANDUM, OPINION AND ORDER

McDONALD, District Judge.

Came on to be heard the Defendant's, The New York Times Company (hereinafter "The Times"), Motion to Dismiss for lack of jurisdiction; for insufficiency of process, improper venue, or, in the alternative, to transfer the case to the Southern District of New York and for a more definite statement. Having carefully considered the parties' arguments, legal memoranda and applicable law, this Court is of the opinion, for the reasons set forth below, that the Defendant's Motions should be Denied.

I. *Introduction*

Plaintiff filed this action in the United States District Court, Southern District of Texas on August 27, 1982. The Times received the summons and complaint by certified mail on September 8, 1982. The Complaint alleges a cause of action for libel. Plaintiff alleges he was libeled by an article published in the Sunday edition of the *New York Times* on August 30, 1981. The article was based on reporting by John M. Crewdson and Wendell Rawls, Jr. and was written by Mr. Crewdson and Mr. Rawls. James F. Clarity and Marcia Chambers also contributed to this reporting.

The Times is a corporation duly organized and doing business under the laws of the state of New York with its principal office and place of business located at 229 West 43rd Street, New York, New York. It publishes *The New York Times,* a daily and Sunday newspaper. The Times does not own any assets in the State of Texas. The New York Times Company is not qualified or registered to do business in Texas and has no agent in Texas for service of process. The Times does maintain a news bureau at 202 Travis Street in Houston, Texas. This office is staffed by two reporters and a secretary who gather items of news interest to be reported in the *New York Times.* The reporters in the Houston office cover

the southwest region of the United States. None of the reporters in the Houston office participated in the preparation of the allegedly defamatory article. Moreover, none of the reporters named above entered the State of Texas in preparing the article.

The *New York Times'* total circulation on August 30, 1981, was approximately 1,445,-119. Only 6,725 copies of the newspaper published on August 30, 1981 were mailed to subscribers or sold by independent distributors in the State of Texas. This amounted to approximately 0.0046 of the total Sunday circulation.

## II. *Due Process and First Amendment Right*

■ In order to determine, in a diversity action, if the plaintiff has properly asserted jurisdiction over the defendant, the Court is guided by state law. It is apparent that the Texas long-arm statute, Tex.Rev. Civ.Stat.Ann. art. 2031b (Vernon 1964), extends to the permissible limits of due process. *Hall v. Helicopteros Nacionales De Colombia, S.A.* (Helicol), 638 S.W.2d 870 (Tex.1982). It is not necessary, therefore, for this Court to ascertain under the requirements of *Erie* and its progeny [1] whether the long-arm statute was intended to encompass the challenged service. The issue to be addressed by the Court is whether due process requires the dismissal of a suit against a non-resident defendant unless he has "certain *minimum contacts* with (the forum) such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (emphasis added). *See World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International*

*al Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Whether the exercise of personal jurisdiction over an out-of-state newspaper is constitutionally permissible under the due process clause is controlled by federal law. *See e.g., Amba Marketing Systems, Inc. v. Jubor International, Inc.,* 551 F.2d 784, 789 (9th Cir.1977).

The Defendant contends that under the applicable case law, the intersection of First Amendment rights with due process in the instant controversy prohibits the assertion of jurisdiction. In *New York Times Co. v. Connor,* 365 F.2d 567, 572 (5th Cir.1966), the Fifth Circuit recognized that the exercise of jurisdiction over non-resident newspaper corporations may "limit the circulation of information to which the public is entitled in virtue of the constitutional guarantee" and will "freeze out of existence" the distribution of controversial non-resident newspapers in a particular locale. 365 F.2d at 573. The *Connors* Court held in order to curb the potential abuse, in the exercise of jurisdiction, that "First Amendment considerations surrounding the law of libel require a greater showing of contact to satisfy the due process clause than is necessary in asserting jurisdiction over other types of tortious activity." *Id.*

The Fifth Circuit in *Edwards v. Associated Press,*[2] 512 F.2d 258 (5th Cir.1975), set out a three stage inquiry to be addressed when determining the permissible limits of the Court's exercise of jurisdiction:

> Our cases, then generally require that the defendant engage in sufficient local activity, or cause a consequence, in the forum state 'sufficient "to indicate a pur-

---

1. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1933); *Walker v. Savell and Associated Press,* 335 F.2d 536 (5th Cir.1964).

2. In *Edwards* the Fifth Circuit Court of Appeals held:

> AP's activities in Mississippi indicate that AP has engaged in sufficient local activity to justify, under the due process clause, Mississippi's exercise of its jurisdiction. AP main-

tains five news correspondents in Mississippi as well as a maintenance employee. Moreover, these employees occupy an office in the state, although the office is offered without rent by two AP members and it is not designated as an AP office in the building directory. More significantly, the news report upon which plaintiff's libel action is predicated was aimed exclusively at Mississippi.
512 F.2d at 267 (footnotes omitted).

poseful enjoyment of the benefits and protection of that state's law," *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723 [5th Cir.1973], reh. denied, 474 F.2d 1347, 1348 (5th Cir. [1973] cert. denied, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973); *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir.1969), the cause of action sued upon usually must stem from the defendant's activities in the local forum, *Curtis Publishing Co. v. Birdsong*, 360 F.2d 344 (5th Cir.1966); *Turner v. Jack Tar Grand Bahama, Ltd.*, 353 F.2d 954 (5th Cir.1965), and the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant comport with elemental notions of fairness, *Curtis Publishing Co. v. Golino, supra*, 383 F.2d 586 [5th Cir.1967]; *Buckley v. New York Times Co.*, 338 F.2d 470 (5th Cir.1964). 512 F.2d at 267.

The defendants argue that applying the rationale of *Connor*, to the case at bar, to subject them to the jurisdiction of the Court would chill constitutionally protected speech and violate due process. However, the *Connor* opinion does not stand as a bar to a state exercising jurisdiction over a newspaper simply because it may implicate First Amendment rights. The First Amendment considerations outlined in *Connor* are a factor relevant, not controlling, a determination of the fairness of exercising jurisdiction over the defendant. *See Edwards v. Associated Press*, 512 F.2d 258 (5th Cir.1975); *Curtis Publishing Co. v. Golino*, 383 F.2d 586 (5th Cir.1967); *Buckley v. New York Times Co.*, 338 F.2d 470 (5th Cir.1964). This Court is mindful of Judge Lynee's reasoned comment in *Edwards* that "*Connor* indicates not so much a rule as it expresses a cautionary note." 512 F.2d at 266.

The activities of the New York Times in the state of Texas indicate that the newspaper has engaged in sufficient local activity to justify, under the due process clause, the exercise of *in personam* jurisdiction. Unlike the facts in *Buckley v. New York Times Co.*, 338 F.2d 470 (5th Cir.1964), and in *New York Times Co. v. Connor*, 365 F.2d 567 (5th Cir.1966), the New York Times maintains a permanent news bureau staffed by two reporters and a secretary at 202 Travis Street in Houston. The Times corporation solicits and sells advertising space in the New York Times on a continuous basis and sells more than one million copies of the newspaper in Texas every year. A comparison of circulation figures in *Connors* and the case at bar are significant—Sunday circulation in *Connors* was only about 2,455 while in the instant controversy, Sunday circulation is about 6,725 copies; total circulation in *Connors* was about 650,000, while in this case circulation exceeds 1,000,000 copies per year.[3]

The defendant argues that none of the authors of the article entered the State of Texas, the article was written, edited and published in New York, New York. Therefore, the plaintiff's cause of action does not stem from the Time's activities in the local forum and the Court is without jurisdiction. "Minimum contacts", however, need not arise from actual physical activity in the forum state; activities in other forums with foreseeable effects in the forum state will suffice. *Great Western United Corp. v. Kidwell*, 577 F.2d 1256, 1267 (5th Cir.1978). Although the author of the allegedly defamatory article did not spend time in the forum state, it is undisputable that such an article would have a foreseeable adverse effect on the reputation of the plaintiff within the State of Texas.

This Court finds that rationale. compelling in the instant controversy. In the instant controversy, more than 6,725 copies of the New York Times issue containing the front page article allegedly defaming the Plaintiff were sold and circulated in Texas.

---

**3.** The weakness in any analysis which relies solely on the number of newspapers sold in the forum to determine if the exercise of jurisdiction is consistent with due process is drawing the line. This Court expresses no opinion on just at what point the demarcation is to be made. In this set of facts, it is sufficient to say that the number of sales, daily and Sunday constitute a "substantial contact" with the forum to justify the exercise of jurisdiction.

The defendant emphasizes that the article was aimed at a national market and was not limited to the state market. In *Edwards v. Associated Press*, 512 F.2d 258 (5th Cir.1975), the Fifth Circuit found the exercise of jurisdiction consistent with due process on facts in which the news market was limited to the State of Mississippi. The touchstone of the Court's analysis in *Edwards* was the substantial interest of the state in protecting the rights of its citizens, a factor discussed in *McGee* and emphasized again in *Hanson*. *See also Caldwell v. Crowell-Collier Pub. Co.*, 161 F.2d 333 (5th Cir. 1947), *but see Curtis Publishing Company v. Birdsong*, 360 F.2d 344 (5th Cir.1966).

This Court finds that the State of Texas has a substantial interest in providing a forum for the redress of torts committed by non-residents outside the forum against state citizens which causes an injury within the forum. It is only reasonable that the plaintiff, Ken M. Stabler, a citizen of the State of Texas,[4] should file a libel action in the state of his domicile where he allegedly has suffered the greatest injury by his loss of reputation. The New York Times developed and prepared a story which had greater reader interest, was colorful and had the potential to inflict injury within Texas. The development of the story and the publication of it under these circumstances constituted the alleged cause of tortious injury within the state and the defendants cannot now invoke the First Amendment as a shield to preclude the exercise of jurisdiction. Cf. *Anselmi v. Denver Post Inc.*, 552 F.2d 316 (10th Cir.1977), which found *in personam* jurisdiction on similar reasoning.

[6] The Court has weighed the First Amendment considerations as one factor in determining whether the exercise of jurisdiction comports with elemental notions of fairness. This Court, however, does not consider them controlling on the facts of this case. In this Court's opinion, the First Amendment considerations do not preclude the assertion of jurisdiction over a national newspaper, when the purposeful nature of such a publication's activities in the forum, and the pecuniary benefits derived therefrom, tend to ameliorate the fear that the prospect of litigation might limit the paper's circulation. *See Curtis Publishing Company v. Golino*, 383 F.2d 586, 592 (5th Cir.1967).

III. *Service of Process*

■ The Defendant's contention that plaintiff's complaint and summons should be dismissed for insufficiency of process must also fail. Service of process on a non-resident defendant is controlled by Article 2031b, Texas Revised Civil Statute which provides, in relevant part as follows:

Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State . . . and does not maintain a place of regular business in this State or a designated agent upon whom service may be made; upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership or non-resident natural person is a party or is to be made a party.

Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State or the commit-

---

4. Based upon the Court's review of the pleadings and the affidavit of Mr. Ken M. Stabler, the Court finds that Mr. Stabler is a resident of the State of Texas.

ting of any tort in whole or in part in this State . . .

The Defendant argues that Texas law requires that a plaintiff affirmatively allege facts on the face of the pleadings which indicate that service is proper under the statute. Specifically, the defendant argues that the pleadings must affirmatively allege that the non-resident corporation does not maintain in Texas either (1) a regular place of business or (2) a designated agent for service. Since the plaintiff failed to allege the necessary facts in the complaint under the Texas "long-arm" statute, the New York Times contends that the complaint and summons should be dismissed pursuant to Rule 12(b)5 of the Federal Rules of Civil Procedure.

This precise contention was addressed and rejected in *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir.1969). In the *Killian* decision, the Fifth Circuit Court of Appeals held that the only prerequisite to the applicability of section 3 of Article 2031b is that the record, not the pleadings as urged by the defendant, show that "the corporation being sued does not maintain a regular business in this state or a designated agent upon whom service may be made." 414 F.2d at 602. The Court finds that the record in the case at bar reflects the two short-arm methods of serving process discussed above are unavailable to the plaintiff.

## IV. *Venue*

■ Defendant next argues that plaintiff's complaint should be dismissed for improper venue. The defendant's argument hinges on the assertion that the plaintiff is not a resident of the State of Texas. Since the Court finds that the plaintiff is a resident of Texas, venue is proper pursuant to 28 U.S.C. § 1391(a) and (c).

■ The defendant also argues that in the interest of justice and for the convenience of the parties and witnesses, this action should be transferred from this Court to the United States District Court for the Southern District of New York. Section 1404(a) permits a district to transfer an action to another district court division "for the convenience of parties and witnesses, [and] in the interest of justice." The decision to transfer is committed to the sound discretion of the district court and is made for the purpose of preventing waste of time, energy and money to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964). *See generally* Wright & Miller, *Federal Practice & Procedure*, §§ 3841–3855. In exercising its discretion, the district court should consider the following factors: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of books and records; (4) the availability of judicial process to compel the attendance of unwilling witnesses, and (5) the possibilities of delay and prejudice if a transfer is granted. *See Mobil Oil Corporation v. W.R. Grace & Co.*, 334 F.Supp. 117, 124–125 (S.D.Tex.1971). *See generally* Wright & Miller, *supra*, §§ 3848–3854. Moreover, it is generally held that the plaintiff's choice of venue is to be given substantial weight. Unless the balance of convenience on burden is strongly in favor of the movant, the plaintiff's choice of forum should not be disturbed. *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Menendez Rodriquez v. Pan American Life Insurance Co.*, 311 F.2d 429, 432 (5th Cir.1962); *Ammon v. Kaplow*, 468 F.Supp. 1304, 1313 (D.Kan. 1979); *McKinney v. Southern Pacific Co.*, 147 F.Supp. 954 (S.D.Tex.1957). The moving party asserting a right of transfer has a heavy burden in establishing that a change of venue is warranted. *Van Dusen, U.S. District Judge, et al. v. Barrack, Administratrix, et al.*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Medicenters of America, Inc. v. T and V Realty & Equipment Corp.*, 371 F.Supp. 1180, 1183 (E.D.Va.1974).

■ In the instant case, the convenience of the parties and witnesses and the interest of justice would be best served by denying defendant's Motion to Transfer to the Southern District of New York. The plaintiff's home and business are located in Texas. All persons who will be required to

testify as to the damage to the Plaintiff's business interest are located in Texas. The vast majority of those who will be called to testify with respect to damage to the Plaintiff's reputation and professional prospects as well as offer testimony as to the events described in the alleged defamatory article, reside in the Southwestern and Western United States. Any benefit which may accrue to the New York Times by transfer to the Courts of the State of New York will be offset by the hardship and added expense which such a transfer would impose upon the Plaintiff and nearly all of the witnesses.[5]

*Rule 12(e)*

 Finally, the defendants request the Court to instruct the plaintiff to plead, *in haec verbis,* the defamatory language in the article alleged to be actionable. Plaintiff responds that the Time's article of Sunday, August 30, 1981, is in its entirety defamatory. The Plaintiff's complaint satisfies the notice requirements of Rule 8 of the Fed.R. Civ.P. as interpreted by the Supreme Court in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Accord, Mitchell v. E–Z Way Towers, Inc.,* 269 F.2d 126, 130–132 (5th Cir.1959). Therefore, defendant's Motion for a More Definite Statement is DENIED.

Accordingly, it is ORDERED, ADJUDGED and DECREED that Defendant's Motion to Dismiss for lack of jurisdiction, for insufficiency of process, improper venue, or, to transfer the case to the Southern District of New York and for a more definite statement, be, and hereby, are DENIED.

---

**5.** Choice of Venue in libel or slander actions under state law is controlled by subdivision 29 of Article 1995, Tex.Rev.Civ.Stat.Ann. Subdivision 29 has been held to establish a policy in this State that citizens may litigate their rights in libel suits "... in the county where they vote, pay taxes, and have their residence among the people who know them best...." *General Motors Acceptance Corporation v. Howard,* 487 S.W.2d 708 (Tex.1972).