Reinhold **WEISS,** an
individual, **Plaintiff,**

v.

**RIZZOLI INTERNATIONAL PUBLICATIONS, INC., a New York corporation, the Philadelphia Museum of Art, a Pennsylvania not-for-profit corporation, Dieter Rams, Kathryn B. Hiesinger, and Nancy Baxter, individuals, Defendants.**

No. 85 C 0152.

United States District Court,
N.D. Illinois, E.D.

Sept. 3, 1985.

Robin M. Richter, Spindell, Kemp, Kimmons & Kimball, Chicago, Ill., for plaintiff.

James A. Cherney and David S. Foster, Latham & Watkins, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

BUA, District Judge.

Before the Court is defendants' motion to dismiss based on lack of personal jurisdiction, lack of venue and failure to state a claim upon which relief can be granted. For the reasons stated below, this Court finds that venue is improper under 28 U.S. C.S. § 1391(b) and orders this lawsuit transferred, pursuant to 28 U.S.C.S. § 1406(a), to the District Court for the Eastern District of Pennsylvania.

## FACTS

For purposes of this motion, the following facts are assumed true. Plaintiff Reinhold Weiss ("Weiss") is a consulting industrial designer. In 1965, while employed by Braun Company in Kronberg, Germany, Weiss designed a hand food mixer identified as the M–140. On June 6, 1967, Weiss was issued United States design patent Des. 207,859 for the M–140 mixer design. Weiss resigned from Braun in 1967 and in 1970 established his own design practice in Evanston, Illinois.

On October 16, 1983, defendant Philadelphia Museum of Art, (the "Museum") presented an exhibition of contemporary industrial design, "Design Since 1945," which continued through January 8, 1984. In connection with the exhibit, the Museum also published a catalogue, *Design Since 1945*, which included essays, photographs of the exhibit pieces and biographies of the represented designers. Defendant Kathryn B. Hiesinger, Curator of European Decorative Arts after 1700 at the Museum, conceived, organized and directed the presentation of the exhibit and jointly researched, edited and wrote the accompanying catalogue with co-defendant Nancy Baxter.

Approximately 14,500 soft cover copies of the catalogue were printed and put on sale in the Museum's bookstore in Philadelphia, Pennsylvania on October 13, 1983, where ultimately 90% of these soft cover copies were sold. In addition, the Museum bookstore sold 803 soft cover copies of the book for resale and 964 soft cover copies by direct mail to ultimate consumers. Between 24–30 copies of the soft cover edition of *Design Since 1945* have been sold in Illinois. The Museum sold approximately 3,000 copies of the hard cover edition of *Design Since 1945* to defendant Rizzoli International Publications, Inc. ("Rizzoli") for distribution and sale to the public, and has sold 50 copies of the hard cover edition of

*Design Since 1945* through the Museum's bookstore.

Weiss alleges that both the hard and soft cover editions of *Design Since 1945* contain incorrect and false attributions which designate design M–140 as the work of defendant Dieter Rams, author and co-editor of portions of *Design Since 1945*. Because of the alleged false attributions Weiss contends that the continued sale of *Design Since 1945* in the Northern District of Illinois and elsewhere has irreparably damaged his reputation and credibility and has been the cause of past and future losses of consulting assignments. Weiss further alleges a violation of Section 43(a) of the Lanham Act in that defendants produced a false designation of origin of design. Weiss' complaint also contains allegations of defamation, unfair competition, slander of title and negligence.

## II. DISCUSSION

 Unlike subject matter jurisdiction, personal jurisdiction and venue are privileges of the defendant which may be waived by the parties. Although the question of personal jurisdiction is typically decided in advance of venue, neither personal jurisdiction nor venue are fundamentally preliminary in the sense that subject matter jurisdiction is, and when there is a sound prudential justification for doing so, a court may reverse the normal order of considering personal jurisdiction before venue. *Leroy v. Great Western United Corporation*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979). Such a justification exists in this case. Without diminishing the importance of the personal jurisdiction issue, this Court believes that the question of whether personal jurisdiction was properly obtained pursuant to the Illinois long-arm statute requires resolution of a constitutional issue which, as a prudential matter, should be avoided when it is clear that venue is improper under § 1391(b). *Id.* at 181, 99 S.Ct. at 2715.

Section 1391(b), 28 U.S.C., provides that a civil action not founded solely on diversity may be brought "only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." Because none of the defendants in this case reside in Illinois, the issue is whether the cause of action arose in the Northern District of Illinois.

In *Leroy, supra*, 443 U.S. 173, 99 S.Ct. at 2710, the plaintiff, a Delaware corporation with executive headquarters in Texas, attempted to make a tender offer to purchase shares of stock of a Washington corporation whose principal business, executive office, and major assets were located in Idaho. After delays caused by complications arising from an Idaho takeover statute, the plaintiff corporation filed an action in the United States District Court for the Northern District of Texas against officials of the Idaho Commission of Finance praying for a declaration that the Idaho statute was invalid. The Fifth Circuit Court of Appeals held that for purposes of a 28 U.S.C. § 1391(b) motion, the alleged invalid restraint against the Texas-based corporation had occurred in the Northern District of Texas and venue was thus proper in that district. The Supreme Court reversed, holding that the claim, for purposes of a § 1391(b) motion, arose only in the District of Idaho, since it was action taken in Idaho by Idaho residents that provided the basis for the Texas-based corporation's federal claim.

In reaching that conclusion, the *Leroy* Court reasoned that the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial. The Court further noted that the amendment to § 1391 providing for venue where the claim arose was designed to close the "venue gaps" that existed under earlier versions of the statute in situations in which joint tort feasors, or other multiple defendants who contributed to a single injurious act, could not be sued jointly because they resided in different districts. *See also Brunette Machine Works v. Kockum Industries*, 406 U.S. 706, 710, 92 S.Ct. 1936, 1938, 32 L.Ed.2d 428 (1936).

■ Clearly, this justification for the application of § 1391(b) venue does not exist in the present case. All of the moving defendants, with the exception of Rizzoli, reside in the Eastern District of Pennsylvania. Also, *Design Since 1945*, the subject matter of this lawsuit, was researched, written, edited, published and distributed in Philadelphia. Hence, the overwhelming majority of witnesses and evidence with respect to the alleged infringement would be located in and around the Philadelphia area. Compelling this litigation in the Northern District of Illinois disregards the specific suggestion of the *Leroy* Court that the availability of witnesses, the accessibility of evidence and the convenience of defendants be the persuasive elements when choosing proper venue for purposes of § 1391(b). *Leroy, supra,* 443 U.S. at 185, 99 S.Ct. at 2717. Further, the application of plaintiff's theory that the claim arose in the Northern District of Illinois because the alleged harm to his reputation occurred in this district would render venue proper in conceivably every district where plaintiff's work was recognized. As noted by the *Leroy* Court, "such a reading of § 1391(b) is inconsistent with the underlying purpose of the provision, for it would leave the venue decision entirely in the hands of the plaintiffs, rather than making it 'primarily a matter of convenience of litigants and witnesses.'" *Id.* at 186–87, 99 S.Ct. at 2718.

Additionally, this Court is persuaded by the holding in *Seabrook Foods, Inc. v. Seabrook Brothers & Sons, Inc.,* 495 F.Supp. 792 (S.D.N.Y.1980). In *Seabrook,* the plaintiff alleged that the defendants' use of the trademark and trade name "Seabrook Brothers and Sons" to market frozen food amounted to trademark infringement in violation of the Lanham Act as well as New York Statutes regulating unfair competition. *Seabrook, supra,* 495 F.Supp. at 793. Defendants moved to dismiss on ground of improper venue, or, alternatively, to transfer to the District of New Jersey. The court held that, pursuant to § 1391(b), defendants' contacts with the Southern District of New York were insufficient to support the proposition that plaintiff's claim arose in that district. *Id.* at 794. This finding was based on the court's adoption of the "weight of contacts" test which provides that:

[I]n determining where 'the claim arose,' the weight defendants' contacts in the various districts concerned must be compared and the claim must be deemed to have arisen in the district where the contacts had been most significant.

*Id.* at 794 (quoting *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886 (S.D.N.Y.1974)). The court in *Seabrook* reasoned that because less than one sixth of the sales of the corporate defendant were made in the Southern District of New York, but instead approximately one half of its sales occurred in New Jersey and the remainders throughout eastern United States, and that the defendants had no employees, agents or officers in the Southern District of New York, clearly defendant's "weight of contacts" were not the most significant in the Southern District of New York. *Seabrook, supra,* 495 F.Supp. at 792.

Measured against the standard set forth in *Seabrook,* this Court reaches the conclusion that defendants' contacts with this district are not "substantial." As in *Seabrook,* the defendants here have no employees, agents or offices in this district. Although defendants distributed roughly 30 soft cover copies of *Design Since 1945* in this district, that number amounts to only 0.2 percent of the total 14,500 soft cover copies printed. Such contacts cannot be characterized as substantial and hence cannot be the basis for proper venue in this district.

Weiss argues that venue is proper in the Northern District of Illinois based on the theory that his cause of action "arose" at the place of Weiss' injury. In support of this theory, Weiss relies in part on the reasoning of the court in *Chicago Reader, Inc. v. Metro College Publishings, Inc.,* 495 F.Supp. 441 (N.D.Ill.1980).

In *Chicago Reader*, the plaintiff, a publisher of a weekly newspaper under its registered trademark "Reader" brought suit against the defendant, Metro College Publications, Inc., a Minneapolis publisher of a weekly newspaper, for publishing a similar newspaper under the name "Twin Cities Reader." The suit alleged that defendant Metro intentionally deceived the public as to the nature and quality of the defendant's newspaper. The complaint also alleged, as in this case, violations of the Lanham Act. *Chicago Reader, supra,* 495 F.Supp. at 442.

The court in *Chicago Reader* noted that even though defendant's only place of business and all its assets were in Minnesota, that the defendant's weekly paper was printed in Minnesota, and that articles, editorial comments and advertising material published in the paper were directed toward local Minnesota readers, venue was proper in the Northern District of Illinois based on other significant activities of the defendants. Specifically, the court found that the defendant had conducted negotiations by mail and telephone with potential Illinois advertisers, had attended two Illinois trade shows during which sales for advertising space in defendant's newspaper were made, and had circulated its newspaper within Illinois. The court concluded that these activities constituted more than a "mere vesting of venue." *Id.* at 443.

Based on the findings of the court in *Chicago Reader*, Weiss argues that because defendants distributed copies of the catalogue *Design Since 1945* in the Northern District of Illinois, venue must also be proper in this district. This court disagrees. When measured against the activities of the defendants in *Chicago Reader*, it is clear that the activities of defendants in this case within the Northern District of Illinois are miniscule.

The vast majority of activities leading up to and surrounding the action that is the basis of this lawsuit took place at the Museum in Philadelphia, Pennsylvania, where the catalogue was researched, written, edited and published by Museum employees.

More importantly, by virtue of its composition alone, the publication in this case differs significantly from that in *Chicago Reader*, the effect of which is seen through the activities of the defendants. Unlike the weekly distribution in question in *Chicago Reader*, the distribution of *Design Since 1945* was the result of a publication surrounding a singular event. Defendants in this case did not advertise or solicit advertisers from the Northern District of Illinois in anticipation of the distribution of *Design Since 1945*. By distributing their catalogue, the defendants had no hopes of establishing a market of Illinois subscribers, as was the intent of the defendants in *Chicago Reader*. As the court in *Chicago Reader* noted at the onset of its discussion, "[i]t is well settled that the mere fact that an infringer has sent goods or sales literature bearing the infringing mark in the district cannot be the basis of venue, and that ... venue is proper only in those districts in which the trademark infringer has had significant activities." *Id.* at 443. Clearly, defendants' activities in this district cannot be characterized as significant.

Equally unpersuasive is Weiss' argument based on *Pennwalt Corp. v. Horton Co.,* 582 F.Supp. 438 (E.D.Pa.1984), in which the plaintiff sought a declaratory judgment that defendant's patent was invalid and that plaintiff had not infringed the claims of the patent. The *Pennwalt* court held that a declaratory judgment action seeking to invalidate a patent, and a declaration of noninfringement arises where "the alleged infringer is located, receives the damaging charges of infringement or suffers economic injury as a result of the charges." *Pennwalt, supra,* 582 F.Supp. at 440. The court determined that the claim arose in the district where the plaintiff was located in large part because the plaintiff allegedly suffered economic injury in the form of lost customers and damage to reputation because of the charges of infringement. *Id.*

Weiss argues that based on the findings in *Pennwalt*, venue is proper in this district because of the alleged damage to plaintiff's reputation in this district. However, be-

cause *Pennwalt* was a declaratory judgment action, plaintiff has overlooked the fact that, in essence, the plaintiff in *Pennwalt* was a prospective defendant. Thus, even applying the *Pennwalt* criteria to the case at hand, the proper district for venue becomes the Eastern District of Pennsylvania, the site where the Museum and its employees, as the infringers, are located and where they received the damaging charges of infringement.

Plaintiff also relies on *Stabler v. New York Times Company*, 569 F.Supp. 1131 (S.D.Tex.1983). The plaintiff in *Stabler* brought a libel action in the District Court for the Southern District of Texas against the New York Times. The newspaper moved to dismiss based on improper venue, or, in the alternative, to transfer the case to the Southern District of New York. Upon review of *Stabler*, however, it is clear that the venue issues raised are unrelated to those in this case. Specifically, the motions to dismiss for improper venue in *Stabler* were based on the assertion that the plaintiff was not a resident of the State of Texas and therefore pursuant to 28 U.S.C. § 1391(a) and (c) venue was improper. *Stabler, supra,* 569 F.Supp. at 1137. The *Stabler* court, however, held that the evidence warranted a finding that the plaintiff was a resident of Texas. *Id.* Further, the defendant in *Stabler* requested a transfer pursuant to 28 U.S.C.A. § 1404(a). On the basis of that motion, the court determined that because plaintiff's home and business were located in Texas and because the vast majority of witnesses called to testify resided in the southwestern and western United States, the convenience of the parties and witnesses and the interest of justice would be best served by denying defendant's motion to transfer. *Id.* at 1137–38. Weiss appears to base his argument that venue is proper in the Northern District of Illinois on the court's holding in *Stabler* with respect to the defendant's § 1404(a) motion. This is clearly not the venue issue at issue in this case.

■ In sum, the Court finds that defendants' contacts with this district are insufficient to support the proposition that plaintiff's claim "arose" in this district for the purposes of 28 U.S.C. § 1391(b). Accordingly, venue is not proper in the Northern District of Illinois. However, in the interests of justice it appears that the case should not be dismissed but rather transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1406(a). Defendants' motion to dismiss for lack of personal jurisdiction need not be decided because, even assuming this Court lacks personal jurisdiction over defendants, the Court has the power to transfer the case to a district where venue is proper and the transferee court has jurisdiction over the defendants. *See, e.g., CES Publishing Corp. v. Dealerscope, Inc.,* 544 F.Supp. 656, 659 n. 1 (E.D.Pa.1982); *Seabrook Foods, Inc. v. Seabrook Brothers & Sons, Inc.,* 495 F.Supp. 792, 794 (S.D.N.Y.1980). Furthermore, having determined that a transfer of this case to the Eastern District of Pennsylvania is proper, the Court declines the opportunity to consider defendants' motion to dismiss for failure to state a claim and will leave that matter to the transferee court for its consideration. *See Midwest Precision Services, Inc. v. PTM Industries Corp.,* 574 F.Supp. 657 (N.D.Ill. 1983).

## CONCLUSION

Pursuant to 28 U.S.C. § 1406(a), this cause is transferred to the United States District Court for the Eastern District of Pennsylvania.

IT IS SO ORDERED.