**GUNDLE LINING CONSTRUCTION CORP., Petitioner,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Respondent.**

Civ. A. No. H–93–3387.

United States District Court, Southern District of Texas, Houston Division.

March 2, 1994.

John L. Dagley, Porter & Clements, Houston, TX, for petitioner.

Brendan D. Cook, Verner, Liipfert, Bernhard, McPherson & Hand, Houston, TX, for respondent.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is defendant American Insurance Company's Motion to Transfer Venue (Docket Entry # 10). American Insurance Company ("American"), incorrectly named in the complaint as Fireman's Fund Insurance Company, seeks a transfer of venue under 28 U.S.C. § 1404(a) from the Southern District of Texas, Houston Division, to the District of New Jersey.

After reviewing the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that American's motion should be granted.

## I. *Background.*

This claim arises out of the performance of a construction contract by Agate Construction Co., Inc. ("Agate") for the Gloucester County Improvement Authority ("GCIA") at the Gloucester County Solid Waste Complex located in Gloucester County, New Jersey. Under a subcontract dated March 19, 1992, plaintiff Gundle Lining Construction Corp. ("Gundle") furnished labor, material, and equipment to Agate at the New Jersey site

for the installation of environmental lining systems. As surety, American issued a performance and payment bond covering Agate's performance on the project. Subsequently, the GCIA terminated Agate from the project and filed a lawsuit styled *Gloucester County Improvement Authority v. Agate Construction Co., Inc. & American Insurance Company,* No. L–1201–93, in the Superior Court of Gloucester County, New Jersey, for damages stemming from Agate's alleged delay in completing its performance on the project.

In this action, Gundle contends that Agate breached the subcontract by failing to pay the agreed price for work performed on the project and that American failed to satisfy Gundle's demand for payment under the bond. Gundle filed suit initially in the 151st District Court of Harris County, Texas. American removed the case to federal court and now seeks to transfer it to the District of New Jersey.

II. *Analysis.*

 A motion to transfer venue from one federal district court to another is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this statute is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Stabler v. New York Times Co.,* 569 F.Supp. 1131, 1137 (S.D.Tex.1983). Under § 1404(a), the movant has the burden of demonstrating that a change of venue is warranted. *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966); *Stabler v. New York Times Co.,* 569 F.Supp. at 1137. To prevail, the moving party must show that the balance of convenience and justice weighs heavily in favor of the transfer. *Acrotube, Inc. v. J.K. Fin. Group, Inc.,* 653 F.Supp. 470, 477 (N.D.Ga.1987). Therefore, when assessing the merits of a § 1404(a) motion, a court must determine if a transfer would make it substantially more convenient for the parties to litigate the case. *Id.*

 The decision to transfer a pending case is committed to the sound discretion of the district court. *Van Dusen v. Barrack,* 376 U.S. at 616, 84 S.Ct. at 809; *Parson v. Chesapeake & Ohio Ry. Co.,* 375 U.S. 71, 74, 84 S.Ct. 185, 187, 11 L.Ed.2d 137 (1963). The criteria weighed by a court in deciding a § 1404(a) motion include:

(1) the convenience of the parties;

(2) the convenience of material witnesses;

(3) the availability of process to compel the presence of unwilling witnesses;

(4) the cost of obtaining the presence of witnesses;

(5) the relative ease of access to sources of proof;

(6) calendar congestion;

(7) where the events in issue took place; and

(8) the interests of justice in general.

*St. Cyr v. Greyhound Lines, Inc.,* 486 F.Supp. 724, 727 (E.D.N.Y.1980); *Goodman v. Schmalz,* 80 F.R.D. 296, 300–01 (E.D.N.Y. 1978). For a transfer of venue under § 1404(a), the plaintiff's choice of forum is not accorded the decisive weight it enjoyed under the doctrine of *forum non conveniens. Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1987). Today, the choice of forum is only one of many factors for a court to consider. *Harris Trust & Sav. Bank v. SLT Warehouse,* 605 F.Supp. 225, 227 (N.D.Ill.1985).

 In the instant case, a review of the relevant factors indicates that a transfer is warranted. Under 28 U.S.C. § 1391, venue is proper in the District of New Jersey because that is where a substantial part of the events and alleged omissions occurred. While it may be somewhat more convenient for Gundle to litigate in this forum, the State of Texas lacks any significant connection to the underlying dispute. The events giving rise to this cause of action occurred in New Jersey; Gundle sent employees, materials, and equipment there to perform the subcontract; the environmental lining system constructed by Gundle remains in New Jersey;

and the majority of the material witnesses and relevant documents are located there.

■ To support their respective positions, American and Gundle each list a number of witnesses whose testimony they contend will be required at trial. Gundle's list consists almost entirely of its own employees, whose testimony could be obtained by Gundle both in New Jersey and Texas and, in many instances, would merely be cumulative and directed to collateral issues. A vast majority of the non-party witnesses, who have the most information concerning the performance of the contract, reside in New Jersey. Compulsory process over these witnesses would be available in New Jersey, but not in Texas. Even if some of the witnesses were willing to testify, the cost of transportation to obtain their presence at trial in Texas would be substantial. The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a). *See Electronic Transaction Network v. Katz,* 734 F.Supp. 492, 501 (N.D.Ga.1989); *Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257, 259 (S.D.N.Y.1974). It is the convenience of non-party witnesses, rather than that of employee witnesses, however, that is the more important factor and is accorded greater weight. *See Aquatic Amusement Assoc. v. Walt Disney World,* 734 F.Supp. 54, 57 (S.D.N.Y. 1990); *see also DEV Indus., Inc. v. NPC, Inc.,* 763 F.Supp. 313, 315 (N.D.Ill.1991); *Designs by Glory v. Manhattan Creative Jewelers,* 657 F.Supp. 1257, 1259 (S.D.N.Y.1987). In this situation, the convenience of the non-party witnesses, who appear to have greater knowledge of information material to this case, is better served by a trial in New Jersey.

Although Gundle claims that much of its documentary evidence is located in Texas, it ignores the fact that the documentary evidence held by Agate, American, the GCIA, and the other non-party witnesses is located in New Jersey. Also, a view of the premises would only be available in New Jersey, the site of the project. While Gundle's selection of Texas as the forum is entitled to some weight, it is not controlling given the substantial factors in favor of a New Jersey

forum. *See, e.g., Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 990–91 (E.D.N.Y. 1991); *General Accident Ins. Co. v. Travelers Corp.,* 666 F.Supp. 1203, 1206 (N.D.Ill.1987); *Waites v. First Energy Leasing Corp.,* 605 F.Supp. 219, 222 (N.D.Ill.1985); *St. Cyr v. Greyhound Lines, Inc.,* 486 F.Supp. at 727.

Moreover, under Texas conflicts of law analysis, New Jersey law appears to be applicable to this dispute, as New Jersey has the most significant relationship to the occurrence and the parties. *See Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex.1991); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 678 (Tex.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). Gundle's performance under the subcontract occurred in New Jersey. The subcontract between Gundle and Agate incorporated New Jersey law in its terms. The bond issued by American states that is given in compliance with New Jersey law and further incorporates liability limits pursuant to New Jersey law. The applicability of New Jersey law both to the merits of Gundle's claim on the bond as well as to the contractual relationship between Gundle and Agate weighs heavily in favor of transferring venue. Clearly, a New Jersey court would be more familiar with and better able to apply New Jersey law than would a Texas court. *See General Accident Ins. Co. v. Travelers Corp.,* 666 F.Supp. at 1207; *St. Cyr v. Greyhound Lines, Inc.,* 486 F.Supp. at 726.

Furthermore, the court must consider factors of public interest in determining whether a case should be transferred to another district. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). One such consideration stems from the administrative difficulties that occur when courts become congested with litigation which should have been handled at its place of origin. *Id.* The dockets in the District Courts of New Jersey are not as congested as those of the Southern District of Texas. Statistics maintained by the Administrative Office of the United States Courts reflect that at the beginning of the fiscal year, there were 5,236 pending civil and 633 pending criminal cases in the District of New Jersey, with an average of 391 pending cases per

sitting judge. By contrast, in the Southern District of Texas there were 5,833 pending civil and 2,327 pending criminal cases, with an average of 583 pending cases per sitting judge. Because the Southern District of Texas handles approximately four times the number of criminal cases than are handled in the District Court of New Jersey, greater delays are inevitable, as such an abundance of criminal cases, with their speedy trial limitations, causes the civil cases to remain untried while priority is given to criminal cases. Thus, comparative docket congestion, a proper factor for the court to consider, strongly favors a transfer of this case to the District of New Jersey. *See id.; Hernandez v. Graebel Van Lines,* 761 F.Supp. at 991.

Therefore, the court concludes that the convenience of the parties, the convenience of the witnesses, and the interests of justice would best be served by transferring this case to New Jersey. *See, e.g., Hernandez v. Graebel Van Lines,* 761 F.Supp. at 988–91; *General Accident Ins. Co. v. Travelers Corp.,* 666 F.Supp. at 1206–07; *Waites v. First Energy Leasing Corp.,* 605 F.Supp. at 222–23; *St. Cyr v. Greyhound Lines, Inc.,* 486 F.Supp. at 726–28.

### III. *Conclusion.*

American has met its burden to show that a balance of the factors and circumstances substantially favors a trial in New Jersey. A New Jersey forum would better serve the interests of the parties, the witnesses, and the judicial system. Accordingly, this action is transferred to the District Court of New Jersey.

IT IS SO ORDERED.