**STATE STREET CAPITAL CORP., Plaintiff,**

v.

**Antonio DENTE and Bonnie L. Dente, Defendants.**

**Civ. A. No. H–93–3842.**

United States District Court, S.D. Texas, Houston Division.

June 16, 1994.

Parker D. Young, Dallas, TX, for plaintiff.

James Harrison Miller, Miller & Verbil, Houston, TX, for defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before this court is defendants Antonio and Bonnie Dente's ("the Dentes") Motion to Dismiss or, in the Alternative, to Transfer Venue (Docket Entry # 8). After a review of the motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that the Dentes' motion should be denied.

### I. *Background.*

This is an action to collect the balance allegedly owed on a note. Plaintiff State Street Capital Corp. ("State Street") filed its complaint in the Southern District of Texas asserting that this court has personal jurisdiction over the Dentes and that venue is proper here. The Dentes dispute State Street's jurisdictional allegations. If personal jurisdiction, however, is found to exist, the Dentes argue that the case should be transferred to the Southern District of New Jersey, which they contend is a more appropriate forum.

In 1989, WNS, Inc. ("WNS"), through its agent, Tony Martinez, approached the Dentes in New Jersey about purchasing an existing "Deck the Walls" franchise located in the Woodbridge Mall, in Woodbridge, New Jersey. On July 10, 1989, the parties executed a franchise agreement. It grants the Dentes a license to conduct and operate a retail outlet under the name "Deck the Walls" provided that they comply with all of the terms and fulfill all of the duties set forth in the agreement. Contemporaneously with the execution of the franchise agreement, the Dentes executed both a commercial note, which is the subject of this action, and a security agreement.

In January 1990, Deck the Walls, Inc. purchased certain assets from WNS, including the franchise agreement with the Dentes. The commercial note remained in the possession of WNS. The note was subsequently assigned to First Interstate Bank of Texas, which later assigned it to plaintiff State Street. At all times, the Dentes mailed their payments on the note from New Jersey to Houston, Texas.

As a defense to State Street's collection claim, the Dentes assert that under a rider to the note, WNS or its successor was required to negotiate at least a five-year extension on the franchisee's lease at the Woodbridge Mall in New Jersey. In addition, the Dentes, as the makers of the note, were to have the right to participate in the lease negotiations. The Dentes claim that Deck the Walls did not give them notice of the lease negotiations or made reasonable efforts to renew the lease for an additional five-year term. Because of WNS or its successor's alleged breach of the terms of the rider, it is

the Dentes' position that they were released from any further obligations under the note.

■ Although the commercial note, rider to the commercial note, security agreement, and franchise agreement are separate documents, they were executed contemporaneously in conjunction with the purchase of the franchise and, by their terms, are interrelated. For example, if the Dentes are found to be in default on the commercial note, they will also be in breach of the franchise agreement, and vice-versa. Under Texas law, it is well established that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together. *See, e.g., Jones v. Kelley,* 614 S.W.2d 95, 98 (Tex.1981); *Miles v. Martin,* 159 Tex. 336, 321 S.W.2d 62, 65 (Tex.1959). Thus, to determine whether personal jurisdiction may be exercised over the Dentes in this forum, the court must analyze the entire transaction between the parties, not merely focus on the specifics of the commercial note.

## II. *Personal Jurisdiction.*

■ While the burden of establishing the court's personal jurisdiction rests with the plaintiff, it need only establish a *prima facie* case, as proof by a preponderance of the evidence is not required. *Jones v. Petty–Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992). Here, as the non-moving party, any genuine, material conflicts between the facts, as established by the respective parties' affidavits and other proper summary judgment evidence, must be resolved in the plaintiff's favor. *Id.* Under these circumstances, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985).

■ A nonresident defendant is subject to personal jurisdiction in a federal diversity suit to the extent permitted by the laws of the forum state and considerations of constitutional due process. *Jones v. Petty–Ray Geophysical, Geosource, Inc.,* 954 F.2d at 1067; *De Melo v. Toche Marine, Inc.,* 711 F.2d 1260, 1265 (5th Cir.1983). Because the Texas Long Arm statute reaches as far as is constitutionally allowed, the personal jurisdiction question is actually a constitutional due process inquiry. *Bullion v. Gillespie,* 895 F.2d 213, 215 (5th Cir.1990). For the exercise of personal jurisdiction to be proper: (1) the defendant purposefully must have established minimum contacts with the forum state, invoking the benefits and protections of that state's laws and, therefore, reasonably could anticipate being haled into court there; and (2) the exercise of personal jurisdiction, under the circumstances, must not offend traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1030–31, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84; *Command–Aire Corp. v. Ontario Mechanical Sales & Serv., Inc.,* 963 F.2d 90, 94 (5th Cir.1992).

■ In the instant case, State Street predicates jurisdiction over the Dentes on the Deck the Walls franchise agreement. An individual's contracting with an out-of-state party, however, does not, standing alone, establish sufficient minimum contacts in the other party's home forum for the assertion of personal jurisdiction. Instead, the prior negotiations and contemplated future consequences, along with the terms of the future contract and the parties' actual course of dealing, must be evaluated to determine whether a defendant purposefully established minimum contacts within the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 479, 105 S.Ct. at 2185.

■ In this case, the Dentes appear to have no physical ties to Texas. The Dentes have never resided or maintained offices in Texas and have visited Texas only once in connection with their Deck the Walls franchise. Yet this dispute grew directly out of "a contract which had a substantial connection" with Texas. *See McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct.

199, 201, 2 L.Ed.2d 223 (1957). Like the defendant in *Burger King,* the Dentes chose not to operate an independent local enterprise, but, instead, "deliberately reach[ed] out beyond" New Jersey and negotiated with a Texas corporation "for the purchase of a long term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 479–80, 105 S.Ct. at 2186; *Travelers Health Ass'n. v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). The Dentes ultimately entered into a carefully structured, three-year relationship that envisioned continuing duties to and sustained contacts with Deck the Walls in Texas.

The various provisions of the franchise documents establish that the Dentes "purposefully invoked the benefits and protections" of Texas law for jurisdictional purposes. The relationship between the parties as set forth in the franchise agreement reveals that more was entailed than the Dentes merely sending note payments to Houston. In addition to requiring the Dentes regularly to order materials for their business from Deck the Walls in Texas, the agreement required that the Dentes submit payments for royalties and advertising to the Texas office. The Dentes also obtained insurance for their business from a Houston insurance broker which services most, if not all, of the Deck the Walls stores. Finally, the agreement provides that:

> This Agreement takes effect upon its acceptance and execution by Company [Deck the Walls] in Texas, and shall be interpreted and construed under the laws thereof, which laws shall prevail in the event of any conflict of law.

Although such a provision, standing alone, is insufficient to confer jurisdiction, when combined with the three-year relationship the Dentes established with Deck the Walls' Houston, Texas, office, it reinforces their deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation here. *See Burger King v. Rudzewicz,* 471 U.S. at 482, 105 S.Ct. at 2187.

In light of the Dentes' voluntary acceptance of this three-year obligation and the exacting regulation of their business from Deck the Walls' headquarters in Texas, the "quality and nature" of their relationship to the company in Texas can in no sense be viewed as "random," "fortuitous," or "attenuated." *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980). According to the plaintiff, the Dentes' failure to make the contractually required payments has caused foreseeable injuries to State Street in Texas. Therefore, it is presumptively reasonable for the Dentes to be called to account here for such injuries. *See Burger King Corp. v. Rudzewicz,* 471 U.S. at 479, 105 S.Ct. at 2185.

The Dentes have pointed to no other factors that can be said persuasively to outweigh these considerations or to establish the unconstitutionality of Texas' assertion of jurisdiction. While the court is not insensitive to their situation, the Dentes cannot rely upon State Street's presumably greater financial wealth to defeat this court's assertion of jurisdiction. "Absent compelling circumstances, a defendant who has purposefully derived commercial benefit from his affiliation in a forum may not defeat jurisdiction there simply because of his adversary's greater net wealth." *Id.* at 484 n. 25, 105 S.Ct. at 2188 n. 25. Under the facts of this case, the Dentes could reasonably have foreseen being sued in a Texas court if they defaulted on the note. Therefore, the court concludes that the Dentes purposefully established contacts with Texas when they entered into the franchise relationship with Deck the Walls and the exercise of personal jurisdiction over them does not offend the traditional notions of fair play and substantial justice. Accordingly, the Dentes' motion to dismiss for lack of personal jurisdiction is denied.

### III. *Transfer of Venue.*

A motion to transfer venue from one federal district court to another is governed by 28 U.S.C. § 1404(a), which provides

that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this statute is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964); *Stabler v. New York Times Co.,* 569 F.Supp. 1131, 1137 (S.D.Tex. 1983). Under § 1404(a), the movant has the burden of demonstrating that a change of venue is warranted. *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966); *Stabler v. New York Times Co.,* 569 F.Supp. at 1137. To prevail, the moving party must show that the balance of convenience and justice weighs heavily in favor of the transfer. *Acrotube, Inc. v. J.K. Fin. Group, Inc.,* 653 F.Supp. 470, 477 (N.D.Ga.1987). Therefore, when assessing the merits of a § 1404(a) motion, a court must determine if a transfer would make it substantially more convenient for the parties to litigate the case. *Id.*

 The decision to transfer a pending case is committed to the sound discretion of the district court. *Van Dusen v. Barrack,* 376 U.S. at 616, 84 S.Ct. at 809; *Parsons v. Chesapeake & Ohio Ry. Co.,* 375 U.S. 71, 74, 84 S.Ct. 185, 187, 11 L.Ed.2d 137 (1963). The criteria weighed by a court in deciding a § 1404(a) motion include:

 (1) the convenience of the parties;

 (2) the convenience of material witnesses;

 (3) the availability of process to compel the presence of unwilling witnesses;

 (4) the cost of obtaining the presence of witnesses;

 (5) the relative ease of access to sources of proof;

 (6) calendar congestion;

 (7) where the events in issue took place; and

 (8) the interests of justice in general.

*St. Cyr v. Greyhound Lines, Inc.,* 486 F.Supp. 724, 727 (E.D.N.Y.1980); *Goodman v. Schmalz,* 80 F.R.D. 296, 300–01 (E.D.N.Y. 1978); *see also Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993).

In a transfer of venue analysis under § 1404(a), the plaintiff's choice of forum is entitled to great deference. *Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1396 (S.D.Tex.1992).

 In the instant case, a review of the relevant factors indicates that a transfer is not warranted. Under 28 U.S.C. § 1391, venue is proper in the Southern District of Texas because that is where a substantial part of the events and alleged omissions occurred. While it may be more convenient for the Dentes to litigate in New Jersey, a balancing of the relevant factors favors litigating this dispute in Texas. The events giving rise to State Street's cause of action occurred in the Southern District of Texas because the Dentes' failure to pay the note in this district forms the basis of the claim. *See General Latex & Chem. Corp. v. Phoenix Medical Tech.,* 765 F.Supp. 1246, 1250–51 (W.D.N.C. 1991).

To support their respective positions, State Street and the Dentes list potential witnesses whose testimony they contend will be required at trial. The relative convenience to the witnesses if often recognized as the most important factor to be considered in ruling on a motion under § 1404(a). *See Electronic Transaction Network v. Katz,* 734 F.Supp. 492, 501 (N.D.Ga.1989); *Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257, 259 (S.D.N.Y.1974).

In addition to themselves, the Dentes have identified only one witness who resides in New Jersey—John Carpenter ("Carpenter"), the manager of the Woodbridge Mall. According to the Dentes, Carpenter will testify about the negotiations for renewal of the lease. State Street, however, contends that Carpenter's testimony will be relevant only if the court determines that the note is ambiguous and that the lease negotiations affected the Dentes' continuing obligations under the note.

State Street's list consists of at least nine non-party witnesses who reside in the Southern District of Texas. State Street contends that this list may be expanded to include witnesses necessary to establish the amount due and owing under the note based on the

payments and offsets made by the Dentes prior to their default. Moreover, if this court determines that the contract is ambiguous and Carpenter's testimony is necessary, State Street plans on calling three witnesses who reside in this district to explain the facts surrounding the renegotiation of the lease. State Street contends that it is the testimony of these individuals that is key to explaining how the lease negotiations affected the franchise agreement and note, not the testimony of Carpenter, who is in no way connected with either the note or the franchise agreement. Thus, under the key witness analysis, which dictates that it is not the number of witnesses but the importance of the witnesses that is determinative, State Street's position has greater merit. *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. at 1396.

■ Moreover, it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis. *See Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.,* 734 F.Supp. 54, 57 (N.D.N.Y.1990); *see also DEV Indus., Inc. v. NPC, Inc.,* 763 F.Supp. 313, 315 (N.D.Ill.1991); *Designs by Glory, Ltd. v. Manhattan Creative Jewelers, Inc.,* 657 F.Supp. 1257, 1259 (S.D.N.Y.1987). State Street has sufficiently demonstrated that the vast majority of non-party witnesses, who have the most information concerning the performance of the contract, reside in Texas. Compulsory process over these witnesses would be available in Texas, but not in New Jersey. Even if some of the witnesses were willing to testify, the cost of transporting them to New Jersey would be substantial. In this situation, the convenience of the non-party witnesses, who appear to have greater knowledge of information material to this case, is better served by a trial in Texas. Moreover, the inconvenience to the Dentes can be minimized by this court's mandating that their depositions be taken in New Jersey.

The Dentes have presented no evidence with respect to the location of any documents related to this transaction. On the other hand, State Street has identified that the documents on which it relies are located in either Dallas or Houston. While the documents are not voluminous, the Dentes' failure to identify any documents on which they rely comports with State Street's position that the court should retain the case in the Southern District of Texas.

Moreover, the choice of law provision in the contract stipulates that Texas law will govern the resolution of any disputes between the parties. This factor weighs heavily in favor of retaining the case on this court's docket. Clearly, a Texas court is more familiar with and better able to apply Texas law than a New Jersey court. *See Espino v. Top Draw Freight Sys., Inc.,* 713 F.Supp. 1243, 1245 (N.D.Ill.1989); *General Accident Ins. Co. v. Travelers Corp.,* 666 F.Supp. 1203, 1207 (N.D.Ill.1987); *St. Cyr v. Greyhound Lines, Inc.,* 486 F.Supp. at 726.

Furthermore, the court must consider factors of public interest in determining whether a case should be transferred to another district. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). One such consideration is the possibility of delay, since "a prompt trial is relevant to the convenience of the parties and witnesses in the interest of justice." *Dupre v. Spanier Marine Corp.,* 810 F.Supp. at 827 (citing *Fannin v. Jones,* 229 F.2d 368, 369–70 (6th Cir.), *cert. denied,* 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956)). As the *Dupre* court noted, the Southern District's adoption of the Civil Justice Reform Act of 1991 has enabled it to dispose of cases in an expeditious manner. *Id.* at 828. Moreover, the parties have consented to trial before this court and have already obtained a firm trial setting. Accordingly, transfer to New Jersey would likely delay the trial of this case and hamper the interests of speedy justice.

Thus, the court concludes that the convenience of the parties, the convenience of the witnesses, and the interests of justice would best be served by retaining this case in the Southern District of Texas. Accordingly, the Dentes' alternative motion to transfer venue is denied.

## IV. *Conclusion.*

State Street has met its burden to show that this court has personal jurisdiction over the Dentes and that the balance of the factors and circumstances substantially favors a trial in the Southern District of Texas. A Texas forum will better serve the interests of the parties, the witnesses, and the judicial system. This action shall remain on the docket of this court in the Southern District of Texas.

IT IS SO ORDERED.