Isabel G. **ANDRADE**, et al., Plaintiffs,

v.

Philip J. **CHOJNACKI**, et al., Defendants.

**HOLUB**, et al. v. **RENO**, et al.

**FERGUSON**, et al. v. **RENO**, et al.

BROWN, et al. v. U.S.[1]

RIDDLE, et al. v. RENO, et al.

GYARFAS, et al. v. U.S.

MARTIN v. U.S.

HOLUB, et al. v. U.S.

BROWN, et al. v. U.S.

Civil Action Nos. H–94–0923,
H–94–2153, H–95–0218, H–95–0587,
H–95–0602, H–95–1142, H–95–4246,
H–96–0256 and H–96–0139.

United States District Court,
S.D. Texas,
Houston Division.

April 3, 1996.

1. All references in this Memorandum and Order to *"Brown"* are to Civil Action No. H–95–0587.

Tracey D. Conwell, Caddell & Conwell, Houston, TX, Michael A. Caddell, Joe Phillips, Caddell & Conwell, Houston, TX, for plaintiffs.

R. Joseph Sher, Nina S. Pelletier, Dept. of Justice, Washington, DC, Daniel David Hu, U.S. Attorneys Office, Houston, TX, for defendants.

Walter Reed Lockhoof, TX Attorney General's Office, Austin, TX, for Ann Richards.

Kirk David Lyons, Black Mountain, NC, for Oliver Gyarfas, Individually and as Administrator of the Estate of Aisha, Elizabeth Gyarfas, Individually and as Administrator of the Estate of Aisha, and Misty Dawn Ferguson.

Marie Louise Hagen, U.S. Dept. of Justice, Washington, DC, for the United States of America.

Michael A. Caddell, Caddell & Conwell, Houston, TX, for Helen Martin.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

Pending before the Court are the United States' and the Individual Defendants' **Motions to Dismiss or Transfer for Improper Venue** [Docs. # 21, 75, 85, 88, 121–1, 155–1, 156–1, 157–2, 158–1 and 159–1], the United States' and the Individual Defendants' **Motions to Sever and to Set Separate Submission Dates for the Motions to Dismiss for Improper Venue** [Docs. # 78 and 86], and numerous motions to dismiss and for summary judgment.[2] For the reasons discussed below, Defendants' Motions to Sever and to Transfer for Improper Venue are **GRANTED.** The Court further **ORDERS** that this action be transferred to the Western District of Texas, Waco Division, where venue is properly laid for Plaintiffs' *Bivens* and Sections 1983 and 1985(3) claims and the majority of claims asserted under the Federal Tort Claims Act ("FTCA"). In the interest of avoiding piecemeal litigation, the remainder of Plaintiff's FTCA claims, as well as all Racketeer Influenced and Corrupt Organization ("RICO") claims against the Individual Defendants, will be transferred to the Western District pursuant to 28 U.S.C. § 1404(a). For the reasons discussed below, Plaintiffs' RICO claims against the United States are **DISMISSED.**

### I. FACTUAL BACKGROUND

The facts as alleged by Plaintiffs are as follows. On February 28, 1993, over 100 agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") stormed the Mount

2. The following dispositive motions have been filed in *Andrade:*
1. Dennis's Motion for Summary Judgment [Doc. # 23];
2. United States' Motion to Dismiss and for Summary Judgment in *Andrade* and *Martin* [Doc. # 121];
3. United States' Motion to Dismiss and for Summary Judgment as to the Third Amended Complaint in *Andrade* and the First Amended Complaint in *Martin* [Doc. # 155];
4. United States' Motion to Dismiss and for Summary Judgment as to the Second Amended Complaint in *Ferguson* [Doc. # 156];
5. United States' Motion to Substitute United States for the Individual Federal Defendants,

to Dismiss and for Summary Judgment as to the First Amended Complaint in *Brown* [Doc. # 157];
6. United States' Motion to Dismiss and for Summary Judgment as to the First Amended Complaint in *Riddle* [Doc. # 158]; and
7. United States' Motion to Dismiss and for Summary Judgment as to the First Amended Complaint in *Gyarfas* [Doc. # 159].

Dispositive motions also have been filed in *Ferguson, Riddle, Gyarfas* and *Brown.* With the exception of motions to dismiss filed by former Governor Ann Richards in *Brown,* the Court assumes that the pending motions in the consolidated actions have been subsumed by the substantive motions in *Andrade.*

Carmel Church (a home and place of worship for over 100 Branch Davidians) with semiautomatic weapons, concussion grenades and army helicopters in an attempt to serve an arrest warrant for David Koresh and a search warrant for the church. Plaintiffs' Consolidated Complaint ("Consolidated Complaint"), at 1–2. Some of the Branch Davidians used firearms to defend the Church against the government action. As a result of this incident, many Branch Davidians and federal agents were killed or wounded. *Id.* at 2.

After the failed assault on the Mount Carmel Church, ATF and Federal Bureau of Investigation ("FBI") agents surrounded and laid siege to the Church for 51 days. *Id.* at 2. These Defendants allegedly began assaulting the Branch Davidians by turning off their electricity when overnight temperatures night fell to 20° F; continuously shining searchlights at the compound at night; blaring loud noises, including the screams of rabbits being slaughtered; and tightening the perimeter around the Church with an advancing armored force. *Id.*

On or about April 14, 1993, David Koresh promised the federal agents that everyone in the Church would surrender peacefully. However, on April 19, 1993, federal agents used tanks to crush Church buildings and insert CS gas, thereby disabling and injuring the Branch Davidians. *Id.* at 2–3. Subsequently, a fire began and rapidly consumed the Church. *Id.* at 3. Most Davidians were trapped inside, because the tanks had crushed staircases and blocked exits, and the CS gas impeded their escape. *Id.* Many died from the fire, smoke and CS gas inhalation, and falling debris, while others seem to have committed suicide or been killed by fellow Branch Davidians, allegedly in a mercy killing. *Id.* At least 80 adults and children lost their lives during the April 19th assault, *id.* at 10, many of whom are Decedents of Plaintiff families in this lawsuit.

Plaintiffs have brought suit against the United States, numerous federal officials, and former Governor Ann Richards and members of the Texas National Guard [3] seeking damages for claims arising out of the alleged attack on the Mount Carmel Church in February 1993, the 51–day siege by federal agents, and the final assault on the Church in April 1993. Plaintiffs assert claims under the FTCA, 28 U.S.C. §§ 2671 *et seq.;* 42 U.S.C. §§ 1983 and 1985(3); [4] civil RICO, 18 U.S.C. § 1964(c); and under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ("*Bivens*"), for alleged violations of their constitutional rights.

## II. *DEFENDANTS' MOTIONS TO SEVER*

Plaintiffs argue that the Court must address Defendants' jurisdictional arguments [5] before deciding whether to dismiss or transfer this case pursuant to either 28 U.S.C. § 1404(a) [6] or § 1406(a). [7] In support

---

3. Claims against Ann Richards and Texas state officials appear only to be asserted in *Brown.*

4. Section 1985(3) provides a cause of action for victims injured by conspiracies to deprive them of their civil rights.

5. Defendants argue, for example, that the discretionary function exception to the Federal Tort Claims Act deprives the Court of jurisdiction, that the United States has not waived sovereign immunity for claims arising under the RICO statute, and that, because the *Brown* plaintiffs failed to exhaust their administrative remedies before filing suit in federal court (as required under the Federal Tort Claims Act), the Court lacks jurisdiction over these claims. *See* Memorandum of Law in Support of United States' Motion to Transfer, to Dismiss, and for Summary Judgment [Doc. # 11 in *Brown* ], at 13–44.

6. Section 1404(a) provides for change of venue when venue is proper in more than one judicial district or division:

 For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). This section "operates on the premises [sic] that the plaintiff has properly exercised his venue privilege." *Van Dusen v. Barrack,* 376 U.S. 612, 634, 84 S.Ct. 805, 818, 11 L.Ed.2d 945 (1964).

7. Section 1406(a) provides for change of venue when venue is improper in the original forum:

 The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. 28 U.S.C. § 1406(a).

of this argument, Plaintiffs cite Supreme Court and Fifth Circuit precedent for the proposition that

"the doctrine of forum non conveniens can never apply in the absence of jurisdiction or mistake of venue." In the normal case, therefore, the District Court must first determine that it possesses both subject matter and in personam jurisdiction before it resolves a forum non conveniens motion.[8]

*Syndicate 420 at Lloyd's London v. Early American Ins. Co.*, 796 F.2d 821, 827 n. 8 (5th Cir.1986) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947)).[9] Plaintiffs cite a district court decision for the proposition that the Court may not order a section 1406(a) transfer without first determining that it has subject matter jurisdiction over their claims. *See Naegler v. Nissan Motor Co., Ltd.*, 835 F.Supp. 1152, 1157 (W.D.Mo.1993) ("[a]s under section 1404(a) [in order to effect a section 1406(a) transfer] the Court must have jurisdiction over the subject matter but need not have jurisdiction over the person of the defendant").

Plaintiffs correctly argue that the Court may not order a transfer under either section 1404(a) or section 1406(a) unless it has jurisdiction over the subject matter of their lawsuit. *See* 15 Charles A. Wright, Arthur Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3827, at 262, and § 3844, at 332 (2d ed. 1986). Because transfer is ordered pursuant to both these sections, the Court must address Plaintiffs' contention that Defendants' jurisdictional arguments must be addressed preliminarily, before this

action may be transferred to the Western District of Texas. *See, e.g., Leroy v. Great W. United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2714–15, 61 L.Ed.2d 464 (1979) (a court normally considers challenges to its jurisdiction before determining whether venue is proper).

While superficially somewhat appealing Plaintiff's argument is ultimately unpersuasive, since this is not a case in which subject matter jurisdiction is facially lacking and which, therefore, requires dismissal. *See, e.g.,* D. Hittner, *Federal Civil Procedure Before Trial* ¶ 4:23 (1994) (the absence of complete diversity mandates dismissal prior to consideration of any venue issues by a district court). On the contrary, the Court has federal question jurisdiction over all the claims asserted by Plaintiffs in this lawsuit:

- The Court has jurisdiction over the *Bivens* claims pursuant to 28 U.S.C. § 1331.

- The Court has jurisdiction over the Section 1983 and Section 1985(3) claims pursuant to 28 U.S.C. § 1331.

- The Court has jurisdiction over the FTCA claims pursuant to 28 U.S.C. § 1346(b).[10]

- The Court has jurisdiction over the RICO claims pursuant to Section 1964(a).[11]

Plaintiffs argue that dispositive motions must be decided preliminarily. However, they cite no cases holding that jurisdictional defenses must be resolved before a court

---

**8.** Contrary to this language, the Supreme Court has held that a court that has subject matter jurisdiction and is a proper venue may transfer an action pursuant to Section 1404(a), regardless of whether it has in personam jurisdiction. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 915–16, 8 L.Ed.2d 39 (1962). However, Plaintiffs argue only that the Court must have subject matter jurisdiction before deciding a motion to transfer and, therefore, the Court need not reach this question.

**9.** Section 1404(a) codified the common law doctrine of *forum non conveniens*, although the statutory provision for transfer eliminated the harshest part of the doctrine, *i.e.,* dismissal of the action. *See Norwood v. Kirkpatrick*, 349 U.S. 29,

32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). In the case at bar, Plaintiffs seem to argue that, because the doctrine of *forum non conveniens* does not apply in the absence of jurisdiction, the Court may not transfer this action pursuant to section 1404(a) without first determining that it has subject matter jurisdiction over Plaintiffs' claims.

**10.** Plaintiffs' Complaints (and now the Consolidated Complaint in *Andrade*) correctly allege these jurisdictional bases.

**11.** The Court does not intend to imply any ruling on whether Plaintiffs have stated a legally cognizable claim under any of these theories.

may consider a transfer pursuant to Section 1404(a) or Section 1406(a).[12]

■ While decision on Defendants' substantive motions might obviate the need for determining the transfer motions, "an important element in the litigation, such as a motion for summary judgment, should not be decided by the transferor court but should be adjudicated by the court that has responsibility for ultimately deciding the case." *Gold v. Scurlock*, 290 F.Supp. 926, 929 (S.D.N.Y. 1968) (citing *United States v. Swift & Co.*, 158 F.Supp. 551, 560 (D.D.C.1958)). If the converse were true, Sections 1404(a) and 1406(a) would be undermined, because judicial economy would dictate that the court that decided the substantive motions retain jurisdiction, even if venue were properly laid in two districts or improperly laid in the original forum. Therefore, because the Court need not rule on Defendants' substantive motions before deciding the transfer motions, Defendants' motions to sever the venue motions from the motions to dismiss and for summary judgment are **GRANTED**.

### III. *MOTIONS TO DISMISS OR TRANSFER FOR IMPROPER VENUE*

A. *Plaintiffs' Bivens and Sections 1983 and 1985(3) Claims*

■ The venue provision applicable to Plaintiffs' constitutional claims is 28 U.S.C. § 1391(b)(2), which provides that a civil action in which jurisdiction is not founded solely on diversity may be brought only in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." [13] Plaintiffs allege that venue for the *Bivens*, Section 1983 and Section 1985(3) claims is proper in the Southern Dis-

trict of Texas because a substantial part of the events giving rise to the claims occurred in Houston:

a. The federal government's planning and supervision of its investigation of the Davidians and the government's planning of the February 28, 1993 raid on the Mount Carmel Church occurred in Houston. This planning, supervision, investigation and February 28th assault were the intentional initiation of the entire affair giving rise to Plaintiffs' claims.

b. Decisions were made in Houston to, among other things, (1) target the Davidians, including the Decedents and Survivors, for an investigation and armed assault; (2) seize the Davidians, including the Decedents and Survivors, in a February 28th raid; (3) seize the Davidians, including the Decedents and Survivors, without a warrant or probable cause; (4) arrest David Koresh using an armed assault on the Church rather than during one of his trips to Waco or Dallas, Texas; (5) arrest David Koresh on a day when the federal government knew that over 75 innocents, including the Decedents and Survivors, would be in the Church; and (6) execute the Warrants by a frontal assault rather than a siege.

c. But for the decisions in Houston to investigate and assault the Davidians and the decisions in Houston to attack the Davidians with a frontal assault, the 51–day siege and the April 19th final assault, bombardment, and fire would not have occurred.

12. The case law cited by Plaintiffs stands only for the proposition that a court must have subject matter jurisdiction over an action before considering a motion to transfer. Defendants, on the contrary, cite precedent which, although not controlling, directly counters Plaintiffs' argument that the dispositive motions must be decided before the transfer motions. *See, e.g., Gold v. Scurlock*, 290 F.Supp. 926, 929 (S.D.N.Y.1968), discussed above.

13. To the extent that constitutional claims are asserted against the United States or federal offi-

cials sued in their official capacities, the applicable venue provision is 28 U.S.C. § 1391(e)(2), which provides for venue in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." Because the language in Sections 1391(b)(2) and 1391(e)(2) is identical, the Court's venue analysis is applicable to all constitutional claims, *i.e.*, those asserted against the United States (or defendants sued in their official capacities) as well as against federal officials sued in their individual capacities.

Consolidated Complaint, at 10–11. Despite the fact that Plaintiffs' alleged injuries occurred in Waco, in the Western District of Texas, Plaintiffs argue that a Fifth Circuit decision, *Checki v. Webb*, 785 F.2d 534 (5th Cir.1986), supports their choice of forum in Houston. The Court is unpersuaded.

Although the Court is satisfied that decisions were made in Houston (as well as in other cities in Texas) regarding the execution of the arrest and search warrants,[14] the record demonstrates that no substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in the Southern District of Texas. The events in Houston have an insufficient relationship to Plaintiffs' claims for injuries to support venue in the Southern District of Texas. Houston, in fact, is mentioned only in the venue section of the Consolidated Complaint. As Plaintiffs themselves concede, the acts alleged to have caused injury, and for which compensatory and punitive damages are sought, occurred in Waco, in the Western District of Texas. Waco is where the Mount Carmel Church was located and where Decedents and Survivors resided; Waco is where service of the warrants and the February 28th shootout took place; and Waco is where the 51–day siege and the fire that destroyed the Church occurred. Consolidated Complaint, at 5–9.

 Moreover, as the *Brown* Plaintiffs aver,

> [Plaintiffs'] claims arise from physical attacks on the Mt. Carmel Church Center near Waco, Texas on February 28 and April 19, 1993 and the siege, forced containment and escalating assaults on the Church and its members between those two dates.

First Amended Complaint in *Brown* [Doc. # 23], ¶ 93.[15] There can be no clearer statement that a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Waco rather than in Houston. Indeed, as the *Gyarfas* Plaintiffs conceded in identical actions originally filed in the Western District of Texas,

> Venue is proper in the *Western District of Texas, Waco Division*, as all incidents and occurrences as alleged below occurred in this district.

Complaints in *Gyarfas, et al. v. United States, et al.*, W–95–CA–022 (W.D.Tex. April 12, 1995) ("*Gyarfas II*") and *Gyarfas, et al. v. United States, et al.*, W–93–CA–334 (W.D.Tex. April 25, 1995) ("*Gyarfas I*"), at ¶ 2.1 (emphasis added).[16] The *Gyarfas* Plaintiffs' voluntary dismissal of these actions in the Western District of Texas and the subsequent filing of a lawsuit in the Southern District strongly suggest forum-shopping.[17] Venue rules were designed precisely in order to prevent such conduct. *See League of United Latin American Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 874 (5th Cir.1993), *cert. denied*, 510 U.S. 1071, 114 S.Ct. 878, 127 L.Ed.2d 74 (1994) ("[v]enue rules preserve judicial fairness by preventing forum-shopping and diminishing the chances

---

**14.** Plaintiffs make much of the fact that allegedly critical planning decisions were made in Houston. However, the Treasury Department report indicates that, in late December 1992, tactical planners also met in Austin, in the Western District of Texas, and reviewed reports of interviews of former Branch Davidians and new photographs of the Compound. This information presumably informed Defendants of facts that played into their decisions regarding execution of the warrants, *i.e.*, a "dynamic entry" strategy was eventually chosen in lieu of a siege.

**15.** The *Brown* Plaintiffs are separately represented and, unlike other Plaintiffs, have not included an amended complaint in the Consolidated Complaint filed in *Andrade, Riddle, Martin, Ferguson, Gyarfas* and *Holub*. The Court therefore considers the First Amended Complaint in *Brown* the operative complaint in that action.

**16.** In *Gyarfas I*, Plaintiffs asserted claims arising out of events at Waco pursuant to the Federal Tort Claims Act, RICO, 42 U.S.C. §§ 1983, 1988, 1985(3), 1986 and 1988, the First, Second, Fourth, Fifth and Fourteenth Amendments, and Texas common law. In *Gyarfas II*, Plaintiffs asserted claims pursuant to the Federal Tort Claims Act, 42 U.S.C. §§ 1983, 1988, the First, Fourth, Fifth and Fourteenth Amendments, and Texas common law. In the consolidated action before this Court, the *Gyarfas* Plaintiffs assert claims against the United States pursuant to RICO and the Federal Tort Claims Act.

**17.** *Gyarfas II* was voluntarily dismissed on April 12, 1995 [Doc. # 4 in *Gyarfas II*]. *Gyarfas I* was dismissed pursuant to agreement of the parties on April 25, 1995 [Doc. # 69 in *Gyarfas I*]. The *Gyarfas* action before this Court was filed on April 19, 1995.

of biased adjudication"). Moreover, the original *Gyarfas* complaints are judicial admissions that venue is proper in the Western District of Texas and, thus, bolster the Court's finding that venue is properly laid in Waco rather than in Houston.[18]

Plaintiffs' argument that venue is proper in Houston relies heavily on *Checki v. Webb*, 785 F.2d 534 (5th Cir.1986). In *Checki*, Louisiana state troopers traveling in an unmarked police vehicle chased the plaintiff, a passenger in a car traveling from New Orleans to Baton Rouge, for twenty-five miles in the Eastern District of Louisiana and then continued the pursuit into the Middle District of Louisiana, where they stopped him at a roadblock, handcuffed him and beat him. Plaintiff filed a Section 1983 action in the Eastern District of Louisiana but, because the individual officers were not served within the one year prescriptive period, the district court dismissed the case. The court also held that the action was not filed in the proper venue. The Fifth Circuit reversed the lower court, finding that, pursuant to 28 U.S.C. § 1391(b), venue was proper in either the Middle District or the Eastern District of Louisiana, and that filing of the action in the Eastern District served to toll the running of the prescriptive period on civil rights claims against police officers. Noting that "[i]t is often impossible to isolate one judicial district as the district where the claims arose," the Court of Appeals found that

> The chase for some 25 miles in the Eastern District of Louisiana was in fact the intentional initiation of the whole affair . . . This is clearly one of those cases where there are "two districts that with approximately equal plausibility . . . may be assignees as the locus of the claim."

*Checki*, 785 F.2d at 538 (citation omitted).

Plaintiffs argue that *Checki* is analogous to the case at bar insofar as the federal government's planning and supervision of its investigation into the Davidians and its planning of the February 28th assault on the Mount Carmel Church (all of which occurred in Houston) were the "intentional initiation of the whole affair."[19] Plaintiffs' Response to

18. There seems to be a dearth of Fifth Circuit case law construing Section 1391(b), which was amended in 1990 to provide that venue could properly be laid in more than one judicial district. While the pre–1990 version of Section 1391(b) referred to the district "in which the claim arose," the current version of the statute refers to the district where "a substantial part of the events or omissions giving rise to the claim occurred." Defendants cite a pre-amendment district court decision, *Thornwell v. United States*, 471 F.Supp. 344 (D.D.C.1979), for the proposition that a "preponderance of the contacts" test should determine where "the claim arose" and where venue, in turn, is properly laid. Although *Thornwell* was decided in 1979, before Section 1391(b) was amended, it is nonetheless instructive in determining where venue is properly laid in the case at bar. As the *Thornwell* Court noted, "the district court should accept venue 'if the activities that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to plaintiff's grievance.'" *Thornwell*, 471 F.Supp. at 356. Conversely, a district court should not accept venue if the activities that transpired in the forum district were insubstantial in relation to the totality of events giving rise to Plaintiffs' claims. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3rd Cir.1994) ("[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough [to lay venue under Section 1391(b)]"). Because the events which occurred in Houston were insubstantial in relation to "the totality of events

giving rise to Plaintiffs' claims," the Court finds that venue is improper in the Southern District of Texas. The fact that Plaintiffs agreed to file their lawsuits in Houston does not change the fact that Waco is where the substantial part of the events and omissions giving rise to their claims occurred.

19. Plaintiffs allege that the following critical planning decisions were made in Houston:

1. Defendant Phillip Chojnacki, the Special Agent in charge of the Houston ATF office, who was located in Houston, approved the initiation of the Davidian investigation.
2. The ATF Field Office in Houston directed the development of probable cause for the warrants.
3. Defendant Charles Sarabyn, the Assistant Special Agent in charge of the Houston ATF office, who was located in Houston, supervised the investigation and was responsible for tactical planning to execute the warrants.
4. A meeting which planned the execution of the warrants occurred in Houston on December 4, 1992.
5. A second planning meeting occurred in Houston in late January 1993. During this meeting, the tactical planners decided to use a frontal assault rather than more peaceful options.

These allegations are supported by the Treasury Department's Report on ATF's Investigation of David Koresh. *See* Plaintiffs' Response to Defen-

Defendants' Motions to Dismiss or Transfer for Improper Venue [Doc. # 97], at 8. While this argument seems persuasive at first glance, it ignores several significant distinctions between *Checki* and the case at bar.

First, as the *Checki* Court noted, the building blocks for Plaintiff's Section 1983 claim against the police were laid in the Eastern District of Louisiana, where the unprovoked police chase largely occurred.[20] As the Court of Appeals explained, the chase itself was potentially unconstitutional:

> It cannot be reasonably argued that no serious physical danger confronts civilians who are forced to travel at speeds over 100 mph in their attempt to flee a terrorizing police officer. Furthermore, there is no valid reason for insisting on physical injury before a section 1983 claim can be stated in this context. A police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause physical injury, but he has certainly laid the building blocks for a section 1983 claim against him. Where a police officer uses a vehicle to terrorize a civilian, and he has done so with malicious abuse of official power shocking to the conscience, a court may conclude that the officers have crossed the "constitutional line."

*Checki*, 785 F.2d at 537. The events that Plaintiffs allege occurred in Houston, however, are not analogous. Plaintiffs do not argue that decisions allegedly made in Houston "crossed the constitutional line." While the 51–day siege at the Mount Carmel Church may be analogous to the officers' terrorizing Checki with their vehicle,[21] decisions to in-

vestigate illegal weapons stores and to execute search and arrest warrants are not.[22] These are permissible law enforcement decisions which, when divorced from the subsequent events at Waco, did not on their face cause the injuries for which Plaintiffs seek remedies. The initial planning events do not constitute a substantial part of the events or omissions giving rise to Plaintiffs' claims.

Moreover, the offending conduct in *Checki* (the car chase and the police beating) involved the same defendants and took place within the course of several hours, on a single day. Constitutionally significant events occurred in both judicial districts and led, in an unbroken chain of events, to the injuries inflicted on the plaintiff. In contrast, in the case at bar, several months elapsed between the events that allegedly transpired in Houston and the injuries that subsequently occurred in Waco, with numerous intervening actions by other Defendants in different locations. By the date of the FBI's final assault on April 19, 1993, approximately three months had passed since the last planning meeting in Houston in late January. Moreover, there is no evidence that the decision to storm the Church on April 19th was made in Houston.

*Checki* is also distinguishable from the case at bar because here the chain of events that allegedly began in Houston and ended in Waco included crucial decisions and conduct of the Branch Davidians themselves. Notwithstanding the frontal assault on February 28th, the Davidians refused to permit execution of the arrest and search warrants for David Koresh and the Mount Carmel

---

dants' Motions to Dismiss or Transfer for Improper Venue ("Plaintiffs' Response"), Exh. 3 (U.S. Dep't of Treasury, Report on the Bureau of Alcohol, Tobacco, and Firearms Investigation of Vernon Wayne Howell also known as David Koresh), at 24, 32, 37–38, 43 and 53–54.

**20.** The initiating events and high-speed police chase began and continued for more than twenty miles in the Eastern District of Louisiana. The chase ended six miles inside the Middle District boundary, where the beating of the plaintiff took place.

**21.** The intimidation tactics allegedly used by the federal agents at Waco (*e.g.*, turning off the Davidians' electricity in below-freezing temperatures

and blaring recordings of the screams of rabbits being slaughtered) may have crossed the constitutional line. The Court does not reach this question; it is raised only to distinguish *Checki*.

**22.** ATF began an investigation of David Koresh on June 9, 1992 for the illegal manufacture of machine guns from component parts and the illegal manufacture and possession of destructive devices, including explosive bombs and grenades, and the materials to produce such items. Original Complaint in *Gyarfas* [Doc. # 1], at 7. As a result of this investigation, ATF presented information to the U.S. Attorney's office in February 1993 for the purpose of obtaining an arrest warrant for David Koresh and a search warrant for the Mount Carmel Church.

Church. Plaintiffs admit that they defended the Church and thereby precipitated a lengthy siege by federal agents. Consolidated Complaint, at 2. In addition, David Koresh and many of the Davidians refused to surrender to federal officials until some time in early April. *Id.* at 2–3. Moreover, some Davidians appear to have committed suicide or been killed by fellow Davidians in a "mercy killing." *Id.* at 3. By contrast, nothing in the *Checki* decision suggests that the plaintiff's injuries were self-inflicted or in any way precipitated by him.

A close review of this record leaves the Court unpersuaded that planning decisions made in Houston were "the intentional initiation of the whole affair," as argued by Plaintiffs. Therefore, the Court finds that planning decisions allegedly made in Houston are insufficient to lay venue in the Southern District of Texas as to Plaintiffs' *Bivens* and Sections 1983 and 1985(3) Claims.

## B. Plaintiffs' F.T.C.A. Claims

■ The venue provision for claims under the Federal Tort Claims Act ("FTCA") is 28 U.S.C. § 1402(b), which provides that "[a]ny civil action on a tort claim against the United States ... may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission occurred." Plaintiffs argue that venue is proper in Houston for their FTCA claims because the administrators of some of the Decedents' estates reside in Houston,[23] and because a substantial part of the acts or omissions complained of occurred in Houston. Consolidated Complaint, at 10.

■ The Court has already determined that no substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Houston and, thus, venue in this district is not proper. The same analysis is applicable to Section 1402(b), which arguably is less flexible than Section 1391(b) in accommodating Plaintiffs' choice of forum.[24] Therefore, the Court finds that venue is not proper in the Southern District of Texas as to the FTCA claims.

The Court must carefully consider Plaintiffs' argument that venue for their FTCA claims is proper in Houston, insofar as Tracy Conwell, the administrator in *Andrade* and *Martin,* Steven Thompson, whom Plaintiffs aver will be administrator in *Ferguson* and *Gyarfas,*[25] and Jean Holub and Bobby Wayne Howell, co-administrators in *Holub,* all reside in Houston. The claims of each administrator must be considered in turn in order to assess the merits of Plaintiff's argument.

■ *Conwell FTCA Claims.*—Tracy Conwell is the administrator for 36 estates in *Andrade* and *Martin.*[26] There are no allegations that Ms. Conwell knew or had a per-

**23.** "Where the plaintiff resides" is determined by the residence of the administrator for purposes of venue under the FTCA. *See MacGuineas v. United States,* No. 87–855 SSH, 1987 WL 18473, at *1 (D.D.C. Oct. 1, 1987) (venue appropriate for FTCA claim where representative of Decedent's estate resided); *Buchheit v. United Air Lines,* 202 F.Supp. 811, 812–14 (S.D.N.Y.1962) (in FTCA suit, administrator's personal residence determined venue rather than place of administrator's appointment).

**24.** Venue may be equally correct in two judicial districts under Section 1391(b). *See Checki v. Webb,* 785 F.2d at 537–38. However, the operative language in Section 1402(b), "wherein the act or omission complained of occurred," suggests that, like the previous version of Section 1391(b) (laying venue in the judicial district in which "the claim arose"), venue in FTCA actions (at least when based solely on this ground) is proper in only one district.

Application of the statutory language "wherein the act or omission complained of occurred" is governed by a "preponderance of the contacts test." *See Johns–Manville Corp. v. United States,* 601 F.Supp. 170, 173 (D.Colo.1985), *rev'd on other grounds,* 796 F.2d 372 (10th Cir.1986) (quoting *Thornwell v. United States,* 471 F.Supp. 344, 357 (D.D.C.1979)) (in FTCA action, where the act or omission complained of occurred should be determined "by advertence to events having operative significance in the case"). Applying a "preponderance of the contacts" test in this case, the Court finds that the Western District of Texas, Waco Division, is the where the acts and omissions complained of by Plaintiffs took place.

**25.** Plaintiffs' Response, at 2.

**26.** Plaintiffs' Amended List of Persons with Substantial Knowledge of Events Giving Rise to Plaintiffs' Claims [Doc. # 126] indicates that Conwell is administrator for 36 estates, while the Consolidated Complaint [Doc. # 136] indicates that she is administrator for 27 estates.

sonal relationship with the Decedents, the Survivors or their families outside these lawsuits. Rather, she and her husband, Michael Caddell, originally represented the *Andrade* Plaintiffs as partners in the Caddell and Conwell law firm.[27] She apparently is unrelated to any of the approximately 200 Plaintiffs in this lawsuit, although she was legally appointed administrator for certain of the estates by a Texas probate court. It is obvious that Ms. Conwell was selected by Plaintiffs as administrator for the purpose of attempting to satisfy the venue requirements of Section 1402(b).

■ The Court, as a matter of equity, will not condone the circumvention of the spirit of the federal venue provisions, particularly in a case in which Plaintiffs' claims clearly "arose" in another district and where identical claims originally were filed in the Western District. If venue were sustainable solely on the basis of Ms. Conwell's appointment under the circumstances at bar, then wrongful death plaintiffs in FTCA cases could sue in any district that tangentially touches a case, so long as they retained counsel to serve as an administrator of the Decedent's estate in that district. The venue rules enacted by Congress cannot be construed to permit this result.

The Court finds, therefore, that Conwell's residence in Houston is insufficient under these circumstances to lay venue in the Southern District of Texas. Because the significant events underlying these claims occurred in Waco, the FTCA claims adminis-

tered by Tracy Conwell will be transferred to the Western District of Texas.[28]

■ *Thompson FTCA Claims.*—Plaintiffs indicated in late November 1995 that Steven Edward Thompson would shortly be appointed administrator in *Ferguson* and *Gyarfas*. Plaintiffs' Response, at 2. However, there is no indication in the Consolidated Complaint, filed in mid January 1996, or in any other subsequently filed pleading (as far as the Court can ascertain) that Thompson, in fact, was ever appointed administrator. Therefore, for the purpose of laying venue in the Southern District of Texas, Thompson's purported residence in Houston is irrelevant. Because none of the other administrators in *Ferguson* or *Gyarfas* is alleged to reside in Houston, venue is improper in the Southern District of Texas for the FTCA claims in those cases.[29]

■ *Holub FTCA Claims.*—Because Jean Holub and Bobby Wayne Howell reside in the Southern District of Texas, venue is proper in Houston for the FTCA claims asserted in *Holub*. However, because Holub and Howell represent only three estates in a single action, their residence in Houston is insufficient to lay venue in the Southern District of Texas for all claims in their action or in the consolidated action. Since venue is improper in Houston for the majority of these claims (including the *Bivens* and Sections 1983 and 1985(3) claims asserted in *Holub*), the Court finds that, in the interest of avoiding piecemeal litigation, the FTCA claims in *Holub* should be transferred to the

**27.** Conwell was listed as counsel on the original and the amended complaints in *Andrade* [Doc. # 1 and # 36]. Her name was not removed from the pleadings until September 1994, the Original Complaint having been filed some six months earlier, in March.

**28.** Even if the Southern District of Texas were the proper venue for the FTCA claims administered by Ms. Conwell, venue is still improper in Houston for the constitutional claims brought under *Bivens* and Sections 1983 and 1985(3), many of the RICO claims, *see infra* at 831–832, and the FTCA claims brought by administrators (other than Conwell, Thompson, Holub and Howell) who reside outside the Southern District of Texas, as in *Andrade, Ferguson, Gyarfas* and *Brown*. In this regard, Plaintiffs ask the Court to assert pendent venue over those claims for which

venue is otherwise improper in this district. Plaintiffs' Response, at 6. Because venue is improper in this district for the majority of Plaintiffs' claims, and because these complex cases should be managed and tried as a group, the more prudent and judicially efficient course is to transfer the entire lawsuit to the Western District of Texas. *See* detailed discussion of Section 1404(a) *infra* at 832–834.

**29.** Even if Thompson had been appointed administrator for the FTCA claims in *Ferguson* and *Gyarfas*, this would be insufficient to retain jurisdiction over all of Plaintiffs' claims in the consolidated action. In order to avoid piecemeal litigation, these claims should be transferred to the Western District of Texas, where venue is proper for all the *Ferguson* (as well as the consolidated) claims.

Western District of Texas pursuant to Section 1404(a). *See Van Dusen*, 376 U.S. at 616, 84 S.Ct. at 809 (the purpose of Section 1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense).[30]

## C. *Plaintiffs' RICO Claims*

*Plaintiffs' Contentions Generally.*—The venue provision applicable to RICO claims is 18 U.S.C. § 1965(a), which provides that "[a]ny civil action or proceeding under [RICO] against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." Plaintiffs argue that venue is proper in Houston for their RICO claims because the United States "is found, has an agent and transacts its affairs in the Southern District," and because "Defendant Chojnacki also resides here." Plaintiffs' Response, at 5. Plaintiffs further argue that, in the interest of justice, the Court should assert venue over the remaining individual defendants, because "there is no other district, including the Western District, where all individual Defendants reside, are found, have an agent, or transact their affairs." *Id.* . The Court finds Plaintiffs' arguments unavailing.

■ *Plaintiffs' RICO Claims against the United States.*—The Court holds that Plaintiffs cannot state a claim against the United States for the actions of its agencies under RICO. Absent an express waiver of sovereign immunity, a RICO action cannot be maintained against the United States. *See, e.g., United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 23 (2d Cir.1989) (the relevant sources of congressional intent on the meaning of 18 U.S.C. § 1964(c), the civil RICO provision, do not evince an unequivocal expression of congressional intent to expose the government to RICO liability); *Smith v.*

*Babbitt*, 875 F.Supp. 1353, 1365 (D.Minn. 1995) ("[a]bsent a congressional or tribal waiver, the [Indian] Community, like other sovereigns, is immune from suit for alleged RICO violations"). Moreover, the Ninth Circuit has held as a matter of law that government entities are not capable of forming the criminal intent necessary to support the predicate RICO offenses. *See Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992).

Because Plaintiffs have failed to state a claim for which relief can be granted, their RICO claims against the United States are insufficient to lay venue in the Southern District of Texas.[31]

■ *Plaintiffs' RICO Claims against the Individual Defendants.*—It appears that the only individual RICO Defendant who resides in Houston is Phillip Chojnacki, who is sued only in his individual capacity. *See* Plaintiffs' Response, at 5. Assuming Chojnacki was and still is a resident of Houston (making venue proper for this claim in the Southern District) judicial economy nevertheless dictates transfer of this case to Waco. For the reasons discussed above, venue is not proper in Houston for the vast majority of Plaintiffs' non-RICO claims. The individual RICO defendants may all be sued in the Western District of Texas, because at least one, if not several, reside in that district. By authorizing nationwide service of process, 18 U.S.C. § 1965(b) enables Plaintiffs to bring before a single court all members of a nationwide RICO conspiracy. *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir.1986). This provision also operates to confer personal jurisdiction over defendants not otherwise within the court's jurisdictional reach, so long as those defendants have sufficient minimum contacts with the United States. *Johnson v. Investa-*

---

**30.** *See* more detailed analysis of the traditional Section 1404(a) factors as applied to the case at bar *infra* at 832–834.

**31.** This Court acknowledges that ordinarily motions to dismiss should be determined by the transferee court. However, the inter-relationship of the venue question with the merits makes this deference on the RICO claims impossible. As to all other claims, this Court expresses no opinion on the legal validity of Plaintiffs' theories.

*corp, Inc.,* No. CIV. A. 3–89–2607–H, at *1, 1990 WL 25034 (N.D.Tex. Jan. 31, 1990).

Therefore, in the interest of justice, all RICO claims asserted against Defendants in their individual capacities will be transferred to the Western District of Texas pursuant to Section 1404(a). *Cf. Kempe v. Ocean Drilling & Exploration Co.,* 876 F.2d 1138 (5th Cir.) *cert. denied,* 493 U.S. 918, 110 S.Ct. 279, 107 L.Ed.2d 259 (1989) (holding that the doctrine of forum non conveniens is applicable to civil RICO actions).

**D. Transfer of Claims Pursuant to Section 1404(a)**

■■■■ Because venue is improper in Houston for the majority of Plaintiffs' claims, those claims must be transferred to the Western District pursuant to Section 1406(a). However, the few claims for which venue is proper in both Waco and Houston—the FTCA claims administered by Jean Holub and Bobby Wayne Howell and the RICO claims against the Individual Defendants— will be transferred pursuant to Section 1404(a), which provides for transfer when venue is proper in more than one judicial district. The purpose of Section 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *State Street Capital Corp. v. Dente,* 855 F.Supp. 192, 197 (S.D.Tex.1994) (*citing Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964)). Decisions under Section 1404(a) are committed to the discretion of the district court. *Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir.1988); *Weber v. Coney,* 642 F.2d 91, 93 (5th Cir.1981).

■■■■ Under Section 1404(a), the party moving for transfer has the burden of demonstrating that a change of venue is warranted. *State Street,* 855 F.Supp. at 197; *Sanders v. State Street Bank and Trust Co.,* 813 F.Supp. 529, 534 (S.D.Tex.1993); *Continental Airlines v. American Airlines,* 805 F.Supp. 1392, 1395 (S.D.Tex.1992). A district court that has subject matter jurisdiction and is a proper venue may grant a transfer pursuant to Section 1404(a). *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 465, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962).

For the reasons discussed above, venue is properly laid in the Western District of Texas for all FTCA claims in this lawsuit, as well as for the RICO claims asserted against the Individual Defendants. Moreover, the district court for the Western District of Texas has subject matter jurisdiction over all these claims.

■■■■ When considering whether a transfer is warranted under Section 1404(a), the Court must consider the following factors: plaintiff's choice of forum; the availability and convenience of witnesses and parties; the location of counsel; the location of books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; and the possibility of delay and prejudice if transfer is granted. *Americas Ins. Co. v. Engicon, Inc.,* 894 F.Supp. 1068, 1074 (S.D.Tex.1995); *Bevil v. Smit Americas, Inc.,* 883 F.Supp. 168, 170 (S.D.Tex.1995); *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993). The availability of process to compel the presence of unwilling witnesses and the interests of justice in general are also to be considered. *State Street,* 855 F.Supp. at 197; *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.,* 844 F.Supp. 1163, 1165 (S.D.Tex.1994).

■■■■ *Plaintiff's Choice of Forum.*— Plaintiffs do not seem to dispute the fact that venue is proper in Waco for the majority of their claims. Instead, they argue that, because venue allegedly is also proper in Houston, deference should be afforded their choice of forum. While there is ordinarily a strong presumption in favor of plaintiff's choice of forum, this factor is not significant where, as in the case at bar, the action has relatively little relationship to the chosen forum. *See, e.g., Turner & Newall, PLC v. Canadian Universal Ins. Co.,* 652 F.Supp. 1308, 1310 (D.D.C.1987). Moreover, since venue is improper in Houston for the majority of Plaintiffs' claims, the Court will not retain jurisdiction over those claims properly venued in this district.

■ *Availability and Convenience of Witnesses and Parties.*—The convenience and availability of key witnesses is an especially important factor in considering a Section 1404(a) transfer. *Bevil,* 883 F.Supp. at 170; *Gundle,* 844 F.Supp. at 1166. Defendants have identified 120 witnesses in the Western District of Texas, over 100 of whom are located in Waco, San Antonio and Austin.[32] Seventy-one of the witnesses listed by Defendants are located in Houston, in the Southern District of Texas.[33] Plaintiffs have identified 25 witnesses in the Southern District and 27 in the Western District.[34] Moreover, the majority of witnesses listed on both sides is located outside Texas.[35] Therefore, the convenience of the witnesses factor weighs in favor of transfer, particularly in light of the fact that, should the Court retain jurisdiction over the RICO and *Holub* FTCA claims, many of the same witnesses would have to testify in both the Houston and Waco actions.

■ The convenience of the *Holub* plaintiffs weighs against transfer, since both co-administrators reside in Houston. However, because the *Bivens* claims in *Holub* are improperly venued in Houston, judicial economy dictates that the case be transferred in its entirety to the Western District of Texas. Moreover, apart from Tracy Conwell and the *Holub* administrators, none of the more than 200 Plaintiffs in this lawsuit is alleged to reside in Houston. Therefore, the convenience of the parties is largely unaffected by the transfer of this action to the Western District.

■ *Location of Books and Records.*—Plaintiffs argue that the bulk of evidence in this case (*i.e.,* documents, videos and other materials) is located outside Waco, either in Washington, D.C. or at the F.B.I. laboratories in Quantico, Virginia. Plaintiffs further argue that there is no need for a visit to the Mount, Carmel Church site, because it was leveled by the government in May 1993. Because no evidence is alleged to be located in Houston, however, this factor weighs neither for nor against transfer to the Western District.

*Cost of Obtaining Attendance of Witnesses and Other Trial Expenses.*—The Court finds that, for the reasons discussed in its convenience of parties and witnesses analysis, the cost of obtaining attendance of witnesses and other trial expenses weighs in favor of transfer.

*Place of Alleged Wrong.*—Because Plaintiffs' alleged injuries occurred in the Western District of Texas, this factor weighs strongly in favor of transfer.

■ *Location of Counsel.*—Plaintiffs argue that, because two of the law firms representing them are located in Houston, a Waco venue will be significantly more expensive.[36] However, the location of counsel is entitled to little or no weight in the Court's transfer analysis. *Bevil,* 883 F.Supp. at 171; *Dupre,* 810 F.Supp. at 826. Moreover, the majority of Plaintiffs' claims may only be brought in Waco. Therefore, counsel must incur travel expenses regardless of where the remainder of their claims is litigated.

■ *Possibility of Delay and Prejudice if Transfer is Granted.*—Comparative

---

32. United States' and Individual Federal Defendants' List of Persons with Substantial Knowledge of the Events which Gave Rise to the Complaint [Doc. # 124].

33. *Id.*

34. Plaintiffs' Amended List of Persons with Substantial Knowledge of Events giving Rise to Plaintiffs' Claims and/or Damages [Doc. # 126]. Plaintiffs argue that, absent discovery, they could not identify every witness located in Houston. This figure while significant is not central to the Court's analysis, given the substantial number of witnesses in the Western District and outside Texas.

35. Defendants have identified 198 witnesses in Washington, D.C. and approximately 500 witnesses (in total) outside Texas. Approximately 300 witnesses are located within the state. Plaintiffs have identified 60 witnesses outside Texas and approximately 50 in the Southern and Western districts combined.

36. Plaintiffs contend that counsel will have to travel to Waco for numerous hearings regarding discovery disputes and the complex legal issues involved in their constitutional and FTCA claims and for a trial that will last at least eight weeks. Plaintiffs' Supplemental Response to Defendants' Motions to Dismiss or Transfer for Improper Venue [Doc. # 105], at 2.

docket congestion is a proper factor for a court to consider in ruling on a motion for transfer. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Gundle,* 844 F.Supp. at 1167. The Administrative Office of the United States Courts reports that, for the twelve month period ending December 31, 1995, 10,529 civil cases (approximately 585 per judge) were filed in the Southern District of Texas, Houston Division, while, in the same period, only 381 civil cases were filed in the Western District of Texas, Waco Division.[37] Moreover, the criminal case load is substantially heavier in Houston, which has one of the largest criminal dockets in the country. Since the majority of Plaintiffs' claims may only be brought in Waco, and duplicative litigation should be avoided, delay is minimized by transfer of all claims to the Western District. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, S. Atl. and Gulf Coast Dist. of ILA, AFL–CIO,* 751 F.2d 721, 729 (5th Cir.1985); *Santa Fe Int'l Corp. v. Transcontinental Gas Pipe Line Corp.,* 728 F.Supp. 435 (E.D.Tex.1989). Finally, Judge Walter Smith is familiar with many of the issues raised in Defendants' dispositive motions. *See infra* note 40. Therefore, the possibility of delay factor weighs in favor of transfer.

### E. *The Possibility of a Fair Trial in Waco*

 Plaintiffs allege that inflammatory, prejudicial publicity has so pervaded the Waco community that it is impossible for them to get a fair trial by an impartial jury drawn from that community. Plaintiffs' Response, at 16. Plaintiffs point to articles in the *Waco Herald–Tribune* characterizing David Koresh as a child abuser and rapist and describing the Branch Davidians as "dangerous," "sinister" and a "menace to [the] community." *Id.* at 16–17. Plaintiffs further maintain that local press coverage was so hostile that the 1994 criminal trial of certain Davidians who survived the April 19th fire was moved to San Antonio, Texas. *Id.* at 17.

Finally, Plaintiffs argue that Judge Walter Smith, who would preside over this action, was unfairly prejudiced by the prosecutions' characterization of Defendants in the 1994 case and, as a result, is biased against Decedents and Survivors and their claims. *Id.* Plaintiffs maintain that this bias is evidenced by the first two pages of Smith's *Sentencing Findings and Opinion,* in which most of the major issues in this lawsuit allegedly have been prejudged.[38]

 The Court remains unconvinced that Judge Smith's rulings evidence bias against the Plaintiffs or the claims in this lawsuit. In order for a judge to be disqualified on the grounds that he or she is biased, the bias or prejudice attributed to the judge must stem from an extrajudicial source and must result in an opinion on the merits on some basis other than what the judge learned from his or her participation in the case. *United States v. Grinnell Corp.,* 384

---

**37.** Statistics Division, Administrative Office of the United States Courts, *Five Year C–3 Table,* at 137, 146. There are eleven district court judges in the Southern District of Texas, Houston Division and one judge in the Western District of Texas, Waco Division.

**38.** Plaintiffs argue that the following rulings evidence bias:
1. The Defendants and other adult Branch Davidians "engaged in a conspiracy to cause the deaths of federal agents."
2. "It was part of the beliefs of the Branch Davidians, expressed and taught by their leader, that they must bring about a violent conflict with federal agents, thereby forcing the agents to use deadly force against them."
3. David Koresh "preached sermons to motivate his 'army.'"
4. The Branch Davidians prepared for "the ambush of February 28th...."
5. "... as agents attempted to execute a lawful search warrant, the first shots were fired from inside the front door of the Compound...."
6. After the 51 day siege, "by a combination of suicide and murder inflicted by Davidian upon Davidian, all but a handful of the Davidians were killed."

Plaintiffs' Response, to Exh. 5 (*United States v. Branch, et al.,* No. W–93–CR–046, Sentencing Findings and Opinion at 315–16 (W.D.Tex. June 17, 1994)).

U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *United States v. MMR Corp.*, 954 F.2d 1040, 1044–47 (5th Cir.1992). Moreover, adverse rulings and statements made by a judge in a prior case are insufficient to require the judge's recusal in a subsequent trial. *United States v. Merkt*, 794 F.2d 950, 959–61 (5th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987). In effect, Plaintiffs' argument is a collateral motion for recusal, and this Court declines to render a formal ruling on that issue. The merits should be heard upon motion in the Western District of Texas. Plaintiffs' evidence of bias based solely on Judge Smith's prior rulings, does not create a basis for denial of transfer in this case.

In a different vein, this Court shares Plaintiffs' concern that the Waco community may be hostile to the Survivors and Decedents, and that Plaintiffs therefore cannot get a fair jury trial in Waco. However, this concern does not prevent transfer of these cases. Should Plaintiffs' concerns prove justified and should the bias persist through the years during which discovery is conducted, and should there be a right to a jury trial on claims that survive after the Defendants' motions are decided, then this case may be transferred for trial to another division in the Western District pursuant to Section 1404(a).[39]

Finally, because Judge Smith has already addressed many of the substantive issues in this case, judicial economy dictates that he decide Defendants' dispositive motions (many of which raise precisely the same issues on which Smith ruled in *Gyarfas I* ).[40] Should Defendants' motions be denied, and the case proceed to trial, Plaintiffs may move for transfer to another division at that time in the Western District.[41]

## IV. ORDER

It is hereby

**ORDERED** that the consolidated action be transferred to the Western District of Texas, Waco Division, pursuant to the following statutory provisions:

1. Plaintiffs' *Bivens* and Sections 1983 and 1985(3) claims are transferred pursuant to Section 1406(a);

2. the FTCA claims administered by Tracy Conwell and Stephen Thompson are transferred pursuant to Section 1406(a);

3. the FTCA claims administered by Jean Holub and Bobby Wayne Howell are transferred pursuant to Section 1404(a);

4. the RICO claims asserted against the Individual Defendants are transferred pursuant to Section 1404(a); it is further

**ORDERED** that the RICO claims asserted against the United States are **DISMISSED.**

---

39. There are several major cities in the Western District of Texas (*e.g.,* Austin and San Antonio) within 200 miles from Waco with entirely different press and populations. Indeed, Judge Smith already has demonstrated his sensitivity to the jury bias and pretrial publicity issues by transferring the criminal case over which he presided to San Antonio. *See supra* at 834.

40. Judge Smith issued a lengthy Order in *Gyarfas I,* partially granting Defendants' Motions to Dismiss. The identical issues are raised in the cases at bar as those addressed by Judge Smith.

41. Plaintiffs cite *United States v. Weddell,* 800 F.2d 1404 (5th Cir.1986), for the proposition that "venue cannot be in a forum where extensive publicity surrounding the case prevents a fair trial." Plaintiffs' Response, at 16. In *Weddell,* the Fifth Circuit found that the trial court had not abused its discretion under Fed.R.Crim.P. 18 in refusing to transfer a criminal case back to a division in which a previous trial had ended in a hung jury. Finding that the lower court had complied with criminal Rule 18 in fixing the place of trial, the Court of Appeals noted that the district judge had considered the extensive publicity surrounding the first trial and determined that a second trial in that location would not be fair to the parties and, thus, would not further the administration of justice. *Id.,* 800 F.2d at 1406. Nothing in *Weddell* supports the Plaintiffs' proposition that adverse publicity renders an otherwise proper venue improper for pre-trial purposes. Moreover, Judge Smith has demonstrated his sensitivity to pretrial publicity issues. *See supra* note 39.